Harold E. Koremann, J.
Petitioner brings this proceeding pursuant to article 78, CPLB, in which it seeks to review and annul respondent’s decision wherein he sustained an appeal from an order of the District Superintendent of Schools of the Town of Hempstead, Nassau County, New York (hereinafter called the Superintendent), and set aside and vacated the order.
The only issue to be determined here is whether respondent’s decision is reviewable by the courts and that question depends upon whether respondent was purely arbitrary in arriving at his decision. (Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127; Matter of Vetere v. Allen, 15 N Y 2d 259.)
Briefly, this controversy arises from an order made by the Superintendent, dated April 28, 1965, in which he sought to redescribe the boundary line between Union Free School District No. 31 (hereinafter called District 31) and Union Free School District No. 11 (hereinafter called District 11), Town of Hemp-stead, Nassau County, New York. Both districts are within the territorial jurisdiction of the Superintendent. The factual background reveals that the Long Island Lighting Company, Inc., erected a generating plant in the mid-1950s on an island bordered by the tidal waters of the Atlantic Ocean in the area of these two school districts which eventually gave rise to the problem of locating the boundary line between District 31 and District 11.
The boundary involved in this proceeding was established in 1927 at the time District 31 was created and was described as follows: ‘‘ BEGirnsnsTG at the point on the southerly boundary of Island Park where the concrete highway-bridge over Wreck Lead or Reynolds Channel to Long Beach intersects the southerly high water mark of Island Park and thence easterly along the mean high water mark to Wreck Lead Channel to Garrett Lead; thence northeasterly, northerly and northwesterly along the westerly high water mark at Garrett Lead to Hog Island Channel; thence northwesterly, westerly and southwesterly along the mean high water mark on Hog Island Channel into Simon Hassock Creek and thence southerly along the easterly mean high water mark of Simon Hassock Creek to Wreck Lead *904 Channel and thence easterly along the mean high water mark of Wreck Lead Channel to the high water mark at the concrete bridge to Long Beach, the point or place of beginning. (It is the intent of the above described area to include what was formerly Barnum Island including Garrett Marsh and Anderson Island).”
The order of the Superintendent redescribed a portion of the boundary line between District 31 and District 11 by a metes and bounds description ‘ along the high water line as it existed in 1907 ” (apparently referring to an earlier description). The Superintendent based his order on his findings that the erection of the power plant and the incidental dredging and filling had altered the shore line and affected high water marks, obliterating them in some instances; that the tides had also caused some alteration of the shore line, which caused identification of the school district boundary line to become difficult. Purportedly the Superintendent’s order was made under the authority of subdivision 1 of section 2215 of the Education Law which sets forth the general powers and duties of a District Superintendent of Schools and reads, in part, as follows: “ 1. To inquire from time to time into and ascertain whether the boundaries of the school districts within his supervisory district are definitely and plainly described in the records of the office of the proper town clerk; to cause to be made and filed in the education department a record of such boundaries, and in case the record of the boundaries of any school district shall be found indefinite or defective, or if the same shall be in dispute, then to cause the same to be amended or an amended record of the boundaries to be made and filed in the office of the proper town clerk and in the education department.”
District 31 filed an appeal to respondent from the Superintendent’s order, contending that the “ mean high water mark ” on Hog Island Channel, as set forth in the description of its district, changed over the years as a result of accretion, and that the land claimed to have been filled in by the power company automatically became a part of District 31 because the physical location of the boundary line shifted with the mean high water mark. After a hearing, respondent agreed with the position taken by District 31, and he arrived at the conclusion that since the boundary line was neither disputed, indefinite nor defective in a legal sense, the Superintendent was without authority to redefine it under subdivision 1 of section 2215, and, accordingly, the order of the Superintendent was vacated. Respondent also found, as stated in his decision, that, based upon the evidence before him, and the applicable principles of law pertaining to accretion and the use of the words “high water mark” in *905 describing boundaries, the land in question was in fact formed by accretion and became and is a part of District 31.
Respondent held that the Superintendent misinterpreted the meaning of “ high water mark ” and erroneously construed the term as describing a high water mark on a particular day and which would not change location thereafter and determined further that the fact that the boundary is subject to change by accretion or erosion does not make it indefinite since it can be ascertained at this time.
While a District Superintendent of Schools is authorized to amend the record of the boundaries of a school district or to cause an amended record of the boundaries to be made and filed, this authority is limited to a ease where the record of the boundaries is indefinite or in dispute (Education Law, § 2215, subd. 1). There is no question of the right to appeal to the Commissioner of Education from an order of the Superintendent so fixing the boundaries of a school district. (See Education Law, § 310, subd. 7; § 2217.) Petitioner argues that the determination of the Superintendent redefining the common boundary line between its district and District 31 was conclusive upon all parties unless it could be shown to have been an abuse of discretion ; that respondent, in arriving at his decision, did not find any abuse of discretion on the part of the Superintendent but simply substituted his own interpretation and his own discretion for that of the Superintendent. Thus, petitioner argues, respondent acted arbitrarily and without legal authority.
In my opinion, respondent had the authority under section 310 of the Education Law to make the determination complained of in this proceeding. As stated in Matter of Vetere v. Allen (15 N Y 2d 259, 265-266, supra): “ The purpose of the grant of quasi-judicial powers under section 310 of the Education Law is ‘ to make all matters pertaining to the general school system of the state within the authority and control of the department of education and to remove the same as far as practicable and possible from controversies in the courts ’ (Bullock v. Cooley, 225 N. Y. 566, 576-577 [1919]). ‘ By our state system of education protected by the Constitution and developed by much study and experience, the commissioner of education is made the practical administrative head of the system, and in his exercise of sound wisdom, as we believe, the legislature deemed it best to make him the final authority in passing on many questions bound to arise in the administration of the school system, and has provided an expeditious and simple method by which a disposition of such questions could be reached through appeal to him ’ (People ex rel. Board of Educ. of City of N. Y. v. Finley, 211 N. Y. 51, 57 [1914]). ‘In appraising the judicial nature of the act of *906 the Commissioner of Education, it must be remembered that he combines both judicial and administrative functions. ’ ”
It is clear that respondent could properly substitute his own judgment for that of the Superintendent’s even without a finding of arbitrariness on the part of the Superintendent, and the courts will not interfere with respondent’s final determination unless it be shown to be purely arbitrary. (See Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127, supra; Matter of Vetere v. Allen, 15 N Y 2d 259, supra.) Here, respondent found on the law and facts that the Superintendent’s order was made without legal authority since, in his opinion, this was not a situation authorizing the Superintendent to act under subdivision 1 of section 2215 of the Education Law.
Petitioner contends further that respondent was in error in giving District 31 the benefits of accretion by applying the legal principles of accretion pertaining to littoral landowners since school districts are not the owners of land. “The term ‘ high water mark, ’ as applied to tidal waters, generally means the line marked by the periodic flow of the tide, excluding the advance of the water caused by winds, storms and unusual conditions.” (6 N. Y. Jur., Boundaries, p. 157, § 15.) I can perceive of no valid reason for giving that “ term ” any other meaning when used to describe a boundary of a school district. While the use of the phrase may have been unfortunate in this kind of a situation, there is no indication that any other meaning was intended when the words were used in the 1927 description. Assuming, as petitioner contends, that respondent failed to consider the consequences of his determination under the circumstances, and did not anticipate the damage that would result to petitioner by such determination, it does not follow necessarily that respondent’s decision was purely arbitrary so as to require the court to intervene. The proper procedure by which a District Superintendent may alter the boundaries of any school district within his jurisdiction is set forth in sections 1507 and 1508 of the Education Law. The Superintendent, however, made his order under the purported authority of subdivision 1 of section 2215, and respondent found that the problem was not related to the description itself but only to the land area it embraces and, therefore, the Superintendent was without authority to act under that section. The language of section 2215 is clear, and it simply requires the Superintendent to inquire into and ascertain whether the boundaries of a school district are definitely and plaintly described, and if they are not, he is required to amend the description. His authority is thus limited under the statute to locating the boundary between the two school districts involved according to the normal and accepted meaning *907 of its descriptive terms, and, consequently, respondent properly held that there was no discretion vested in the Superintendent under section 2215 to change the boundary by arbitrarily fixing it at the high water mark, as it existed in 1907.
Finally, petitioner argues that respondent himself, by his decision, altered the boundary line without legal authority to do so. In my view, respondent simply determined that, based upon the papers and the evidence before him, there could be no dispute as to the boundary, and that it could only be defined in accordance with the description which was made and filed in 1927.
The court concludes that the decision of the respondent was not purely arbitrary and must be accorded the finality required by section 310 of the Education Law. (Matter of Vetere v. Allen, 15 N Y 2d 259, supra). Accordingly, the petition must be dismissed.
Insofar as the motion made by petitioner to delete material from certain exhibits is concerned, the court notes that words, phrases or sentences that tend to explain or interpret exhibits, as distinguished from words of identification, were not considered in arriving at this decision.