In the Matter of RED CEDAR POINT ASSOCIATION, INC., Appellant, v ROBERT F. FLACKE, as Commissioner of the New York State Department of Environmental Conservation, et al., Respondents. — In a proceeding pursuant to CPLR article 78 to review a determination of the respondents granting a tidal wetland permit, petitioner appeals from a judgment of the Supreme Court, Suffolk County (McInerney, J.), dated April 9, 1980, which dismissed the proceeding. Judgment affirmed, without costs or disbursements. No opinion. O'Connor, Bracken and Rubin, JJ., concur.

Weinstein, J. P., dissents and votes to grant the petition with the following memorandum: An application was filed with the Department of Environmental Conservation (DEC) for a tidal wetland permit authorizing construction of a one-family dwelling and a septic tank on a lot in Red Cedar Point. Pursuant to DEC rules, the dwelling had to be at least 75 feet and the septic tank at least 100 feet "landward from the most landward edge of any tidal wetland" (6 NYCRR 661.6 [a] [1] [2]). The landward edge of a tidal wetland is taken to refer to the mean high water mark at that point. The issue to which I address myself concerns the validity of the procedure used by DEC to ascertain the mean high water mark. Pursuant to the mandate of ECL 25-0201, DEC has compiled maps delineating the boundaries of all tidal wetlands in the State. These maps were not utilized by DEC in determining the mean high water mark relevant

to the proposed project. I believe that DEC was justified in declining to use those maps here; the maps, based on aerial infra-red photographs, were not sufficiently detailed to enable it to make an accurate reading with respect to the small (less than 23,000 square feet) parcel of land in question. Instead, DEC determined the mean high water mark on the basis of actual observations of the water line on the single day of December 26, 1979. The majority finds this procedure unobjectionable. In my view, this procedure was so unreliable and fraught with inexactitude as to render DEC's determination arbitrary and capricious. The United States Supreme Court has noted that, under sound astronomical theory, a determination of a mean high water mark should be based on observations of the water line over a period of 18.6 years (see *Borax Consolidated v Los Angeles,* 296 US 10, 27). It cannot be suggested, of course, that such an exacting procedure should have been utilized in this case, especially since DEC had to render a decision on the application for a permit within 45 days of its submission (see ECL 70-0111, subd [b]). Nonetheless, a calculation of a mean high water mark can be considered reliable only if based on observations made over a reasonable period of time (see *Dolphin Lane Assoc. v Town of Southampton,* 72 Misc 2d 868, affd 43 AD2d 727, mod on other grounds 37 NY2d 292; *Matter of Board of Educ. v Nyquist,* 51 Misc 2d 902, affd 28 AD2d 936), and the one-day period utilized here was surely not reasonable. This is especially so in light of an affidavit by a member of petitioner association stating that his experience and observations over a period of 23 years have indicated that the tides of the area fluctuate "dramatically". The day chosen for the making of observations upon which to base the calculation of the mean high water mark could have been a day of atypical tides or winds, not so atypical so as to constitute an "unusual condition", which is not to be taken into account for purposes of fixing a mean high water mark (see 1 NY Jur 2d, Adjoining Landowners, § 77), yet sufficient to alter the calculation to a significant degree. In light of my conclusion that DEC's calculation of the mean high water mark was carried out in an arbitrary and capricious manner, I dissent and vote to grant the petition.