In the Matter of EASTERN NIAGARA PROJECT POWER ALLIANCE et al., Appellants, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents. [840 NYS2d 225]—

Spain, J. Appeal from a judgment of the Supreme Court (Bradley, J.), entered November 2, 2006 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Department of Environmental Conservation issuing a water quality certificate to respondent New York Power Authority.

The Niagara Power Project, operated by respondent New York Power Authority (hereinafter NYPA), is a hydroelectric facility located on the Niagara River which produces 10% of the electricity supplied to New York State. The Project was originally licensed in 1958 by the Federal Power Commission; that license will expire in August 2007. Pursuant to the Federal Power Act, the Federal Energy Regulatory Commission (hereinafter FERC) is the regulatory body which now issues licenses to hydroelectric facilities. In July 2002, NYPA obtained FERC's permission to use an alternative licensing procedure (hereinafter ALP) which allows a license applicant to consolidate all the consultations and approvals that it must receive for relicensing from various state and federal agencies into a single process. One of the participants in this process was respondent Department of Environmental Conservation (hereinafter DEC), the state agency designated to issue a water quality certificate (hereinafter WQC) required under the Federal Clean Water Act for any applicant, like NYPA, that creates a discharge into navigable waters (*see* 33 USC § 1341).

Negotiations between NYPA, DEC and various other state agencies ensued, public meetings were held and, as a result of this ALP process, a relicensing settlement agreement (hereinafter the relicensing agreement) was prepared and fully agreed upon in August 2005 by several local interest groups and the participating state agencies. Thereafter, in response to an official application by NYPA, DEC issued a draft WQC which incorporated the conditions articulated in the relicensing agreement. In September and October 2005, DEC published the draft WQC in the Environmental Notice Bulletin and solicited public comment. Petitioner Eastern Niagara Project Power Alliance (hereafter ENPPA), an unincorporated association of municipal governments and school districts, responded to the October publication with a comment letter expressing a number of concerns about the WQC and seeking an adjudicatory hearing.

DEC nevertheless determined that further review was not warranted, so advised ENPPA and issued the WQC to NYPA in January 2006.

Petitioners—ENPPA and its individual members, comprised of various municipalities and school districts in western New York together with other municipalities and school districts located in that area—then commenced this proceeding, alleging that a public adjudicatory hearing should have been held to address the concerns raised in ENPPA's comments and that, before issuing the WQC, DEC was obligated to review NYPA's WQC application under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]). In November 2006, Supreme Court determined that ENPPA's comments did not trigger a need for an adjudicatory hearing and that SEQRA review was not necessary and, accordingly, dismissed the petition. On petitioners' appeal, we now affirm.

Petitioners assert that DEC was obligated to conduct a public adjudicatory hearing prior to issuing the WQC to NYPA. After DEC receives an application for a WQC, deems the application to be complete and reviews all comments submitted in response to the application, it has 60 days to determine whether or not to conduct a public hearing "based on whether the evaluation or comments raise substantive and significant issues relating to any findings or determinations [DEC] is required to make . . . , including the reasonable likelihood that [the WQC] will be denied or can be granted only with major modifications to the project" (ECL 70-0119 [1]; see 6 NYCRR 621.8 [b]; see also 6 NYCRR 624.4 [c] [2], [3]). Further, once DEC has established that an application conforms to all necessary requirements, "the burden of persuasion is on the potential party proposing any issue related to that [application] to demonstrate that it is both substantive and significant" (6 NYCRR 624.4 [c] [4]).

As an initial matter, we reject petitioners' argument that DEC failed to timely notify ENPPA when it made its determination not to hold an adjudicatory hearing. By statute, DEC is clearly required to, within 60 days, "mail written notice to the applicant of a determination to conduct a public hearing," but does not require such notice when no hearing is to be held (ECL 70-0119 [1]; see 6 NYCRR 621.8 [a]). Next, we reject petitioners' claim that the need for an adjudicatory hearing on ENPPA's comments should have been reviewed in an issue conference by an administrative law judge. Petitioners' reliance on 6 NYCRR 624.4 (b) and (c), which outline the administrative law judge's role in reviewing the need for an adjudicatory hearing, is unavailing inasmuch as such review is conducted only after

DEC has determined, pursuant to 6 NYCRR 621.8 (b), that an adjudicatory hearing should be held (see 6 NYCRR 624.1 [a] [1]; 6 NYCRR 624.4 [b] [1]).

Contrary to petitioners' assertions, we find that DEC was justified in declining to further consider those concerns raised by ENPPA which did not pertain to water quality, namely, the ice boom, shoreline erosion, bird mortality, transmission lines, recreational facilities and socioeconomic impact. The Court of Appeals has held that, by establishing a comprehensive scheme of federal regulation of hydroelectric facilities, the Federal Power Act has preempted any state regulation of such facilities and, thus, "[f]or purposes of issuance of a Clean Water Act § 401 (33 USC § 1341) [s]tate certification, DEC is limited to considering the water quality standards set forth by the [s]tate and approved by the United States Environmental Protection Agency" (Matter of Niagara Mohawk Power Corp. v New York State Dept. of Envtl. Conservation, 82 NY2d 191, 193-194 [1993], cert denied 511 US 1141 [1994]). Although the United States Supreme Court has since extended the authority of state agencies under Clean Water Act § 401 to reviewing the "activities" of hydroelectric power facilities, such activities must still relate to water quality (see PUD No. 1 of Jefferson Cty. v Washington Dept. of Ecology, 511 US 700, 712 [1994]). Further, the United States Supreme Court's decision in S.D. Warren Co. v Maine Bd. of Envtl. Protection (547 US —, 126 S Ct 1843 [2006]), relied on by petitioners, held that states could regulate any activity altering the integrity of water, but did not expand the scope of state review beyond issues impacting water quality (547 US at —, 126 S Ct at 1852-1853). Indeed, the DEC's "consideration of environmental interests beyond the limited bounds of water quality standards in the context of FERC licensing proceedings would constitute an intrusion into an area preempted by the federal statute" (Matter of Erie Blvd. Hydropower, L.P. v Stuyvesant Falls Hydro Corp., 30 AD3d 641, 644-645 [2006], lv dismissed 7 NY3d 843 [2006], lv denied 7 NY3d 718 [2006]).

We also reject petitioners' argument that an adjudicatory hearing was mandated because, through the ALP process, the stakeholders participated in negotiations to the exclusion of the public at large. To the contrary, the record evidence indicates that the general public was given ample opportunity to participate and raise concerns from the outset and the relicensing agreement was offered for public review, as early as August 2005, even prior to its publication in the Environmental Notice Bulletin. Significantly, according to the terms of the relicensing agreement, the parties reserved the right to add new conditions

to the WQC if new information was brought to light through the public comment process.

Turning to petitioners' substantive contention that DEC should have found that ENPPA's comments raised "substantive and significant" issues warranting an adjudicatory hearing, we note that in reviewing an administrative determination our role is not to "reweigh the factors and substitute [our] judgment for that of the agency" (*Matter of Gallo v State of N.Y., Off. of Mental Retardation & Dev. Disabilities*, 37 AD3d 984, 985 [2007]), but to limit our review "to ascertaining whether it is erroneous or arbitrary and capricious and, thus, without a rational basis" (*Matter of Grella v Hevesi*, 38 AD3d 113, 116 [2007]). Here, we agree with Supreme Court that, to trigger the need for an adjudicatory hearing, it was incumbent upon ENPPA to provide support for their stated concerns. "Mere expressions of general opposition to a project are insufficient grounds for holding an adjudicatory public hearing on a permit application. In order to raise substantive and significant issues, written comments expressing objection or opposition to an application must explain the basis of that opposition and identify the specific grounds which could lead [DEC] to deny or impose significant conditions on the permit" (6 NYCRR 621.8 [d]; *see Matter of Citizens for Clean Air v New York State Dept. of Envtl. Conservation*, 135 AD2d 256, 261 [1988], *appeal dismissed* 72 NY2d 853 [1988]). In our view, DEC did not err in finding that ENPPA failed to meet this burden.

Although ENPPA raises several issues under the heading of "Water Quality," we cannot find that DEC abused its discretion in determining that the issues, as articulated, were insufficiently supported. The comments cite changing water levels, supersaturation of atmospheric gases, increases in sedimentation and changes in water temperatures as conditions which may have an adverse impact on the environment, but fail to substantiate these concerns with evidentiary support. Indeed, the water quality issues raised in the comments were investigated during the ALP process through a series of intensive studies and, given the deference due to DEC under these circumstances (*see Matter of Plante v New York State Dept. of Envtl. Conservation*, 277 AD2d 639, 641 [2000]), we will not disturb its finding that ENPPA comments thus failed to raise any unaddressed substantive or significant issue which would merit an adjudicatory hearing.

Finally, we turn to petitioners' argument that DEC was required to conduct an environmental analysis under SEQRA prior to issuing the WQC. We conclude that our analysis in *Matter of Erie Blvd. Hydropower, L.P. v Stuyvesant Falls Hydro*

*Corp.* (*supra*)—where we held that environmental review under SEQRA of a hydroelectric facility's proposed exercise of eminent domain under the Federal Power Act was preempted—is dispositive here. Citing *Matter of Niagara Mohawk Power Corp. v New York State Dept. of Envtl. Conservation* (*supra*), we recognized that, given the comprehensive scheme of preemption by the Federal Power Act, "the Court of Appeals specifically rejected a claim that SEQRA review of a FERC-governed license application was warranted" (*Matter of Erie Blvd. Hydropower, L.P. v Stuyvesant Falls Hydro Corp.*, *supra* at 645). Accordingly, DEC did not err in rejecting ENPPA's request to undertake SEQRA review of NYPA's WQC application.

We have considered petitioners' remaining contentions and find them to be without merit.

Mercure, J.P., Peters, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.