OPINION OF THE COURT
Gerald W. Connolly, J.
Petitioners seek an order pursuant to CPLR article 78 (i) finding that the determination of respondent David M. Steiner, in his capacity as Commissioner of the New York State Educa *559 tion Department (Commissioner), that Cathleen Black was qualified to receive a School District Leader Certificate (Certificate), which is necessary in order to be eligible to serve as Chancellor of the City School District of the City of New York, was arbitrary and capricious, in error of law, and an abuse of discretion and authority and (ii) annulling the granting of the Certificate to Ms. Black.
Consolidation and Intervention
Initially, the court notes that by order to show cause dated December 8, 2010 in the Jeffries matter (index No. 8212-10), such case was consolidated pursuant to CPLR 602 (a) with the Matter of Snyder v New York State Bd. of Regents case (index No. 8112-10), and accordingly, the court is addressing both cases in this decision and order. Further, in both cases, Michael R. Bloomberg, the Mayor of the City of New York (Mayor) and the City of New York have moved to intervene in the proceeding as party respondents. In the Jeffries matter, a Stipulation Re: Intervention has been submitted indicating that the petitioners do not oppose such motion for intervention. At oral argument, held on December 23, 2010, with respect to the Snyder matter, petitioner Eric Snyder also represented that he does not oppose the motion for intervention.
This consolidated action is brought under article 78 of the CPLR, and accordingly, CPLR 7802 (d) governs the proposed intervenors’ motions and authorizes the court to allow “interested persons” to intervene. “[IJntervention should be permitted where the intervenor has a real and substantial interest in the outcome of the proceedings” (Matter of Bernstein v Feiner, 43 AD3d 1161, 1162 [2d Dept 2007]; see also Matter of Ziemba v City of Troy, 37 AD3d 68 [3d Dept 2006]). Based on the record before the court, both the Mayor and the City of New York have a real and substantial interest in the outcome of the instant article 78 proceeding and there is no opposition to such motions. Accordingly, the court granted the motions of the Mayor and the City of New York to intervene on December 23, 2010 at oral argument and their proposed papers were deemed served on the other parties.
Facts
Petitioners are parents of children enrolled in the City School District of the City of New York and a teacher in such District. They have brought these proceedings challenging the November 29, 2010 determination (Decision) of the Commissioner of respondent New York State Department of Education in which *560 the Commissioner granted the November 17, 2010 letter request of the Mayor, that a Certificate be issued to Ms. Cathleen Black upon completion of training in child abuse and school violence prevention. In that letter, the Mayor detailed Ms. Black’s lifetime achievements, which achievements included little experience in the educational field. The Mayor stated, however, that Ms. Black, the former president and then chairperson of Hearst Magazines, is an exceptionally qualified candidate for the position of Chancellor of the New York City public schools, noting accomplishments and experience attained over the course of a long career commencing in 1972. Said accomplishments and achievements included: (i) becoming president and publisher of USA Today in 1983; (ii) assuming the presidency of the American Newspaper Publishers Association in 1991; (iii) service as a Trustee of the University of Notre Dame, Trinity University and The Kent School; (iv) service on the boards of IBM, the United Way and the Coca-Cola Company; and (v) service as a board member of the Advertising Council and a member of the Council on Foreign Relations. The Mayor further noted that in the public and nonprofit arena Ms. Black has, inter alia, served on the New York Forum, recently traveled to Detroit with First Lady Michelle Obama to promote youth leadership and mentoring and received the New Orleans Citizenship award for her leadership in helping New Orleans recover and rebuild in the aftermath of Hurricane Katrina.
As noted by the Commissioner in his Decision (at 1), “[t]he individual occupying the position of Chancellor of the New York City Schools serves as the superintendent of schools and the chief executive officer of the New York City School District”[1] and “Education Law § 3003(1) requires that any person serving as a superintendent of schools must be eligible for a superintendent’s certificate (also known as a school district leader certificate).” To the extent a candidate does not meet the educational and experiential requirements of Education Law § 3003 (1), Education Law § 3003 (3) gives the Commissioner authority to grant such Certificate to a candidate provided the Commis *561 sioner determines that such candidate’s “exceptional training and experience are the substantial equivalent of such requirements and qualify such persons for the duties of a superintendent of schools.”
Upon receiving the Mayor’s request for a Certificate, the Commissioner appointed an eight-person advisory screening panel pursuant to 8 NYCRR 80-3.10 (b) (3) (iii), which provides, inter alia, for “certification of exceptionally qualified persons through screening panel review.” After considering Ms. Black’s qualifications, four panel members recommended that the Commissioner deny the Mayor’s request, two panel members recommended that the Commissioner grant the Mayor’s request and two panel members recommended that the Commissioner deny the Mayor’s request, indicating that they would reconsider such recommendation if further “information and/or evidence of educational support at the district level in the form of a Chief Academic Officer” was provided (Decision at 6).
On November 26, 2010, the Mayor submitted supplemental information indicating that Ms. Black intended to appoint a “Senior Deputy Chancellor and Chief Academic Officer,” explaining the nature and responsibilities of such position and setting forth the qualifications of her candidate for the position, Mr. Shael Polakow-Suransky. According to the Commissioner’s Decision, he “shared the submission with the panel members and discussed it with them. Those that were previously supportive, in whole or in part, viewed the new submission positively.”
On November 29, 2010, the Commissioner issued his Decision, holding that pursuant to Education Law § 3003 (3) and 8 NYCRR 80-3.10 (b) (3) (iii) Ms. Black is qualified to receive such Certificate to serve as Chancellor of the City School District of the City of New York.
Education Law
Education Law § 3003 sets forth the qualifications for the position of superintendent of schools and provides that in order to be eligible for such position an individual must be eligible for a “superintendent’s certificate issued by the commissioner” which certification requires that an individual
“a. . . . shall be a graduate of a college or university approved by the commissioner and in addition shall have completed sixty semester hours in graduate courses approved by the commissioner; and
*562 “b. [a]t the time of his appointment each shall have completed three years of teaching experience satisfactory to the commissioner in public or non-public schools.” (Education Law § 3003 [1].)
Education Law § 3003 (3) further provides a waiver provision, stating that the
“commissioner, at the request of a board of education or board of cooperative educational services, may provide for the issuance of a certificate as superintendent of schools to exceptionally qualified persons who do not meet all of the graduate course or teaching requirements of subdivision one of this section, but whose exceptional training and experience are the substantial equivalent of such requirements and qualify such persons for the duties of a superintendent of schools.”
The Regulations of the Commissioner of Education (8 NYCRR 80-3.10 [“Certificates for the educational leadership service”]) further outline eligibility requirements for receipt of a Certificate by a candidate and alternatives where such qualifications are not all met by a candidate. Specifically, 8 NYCRR 80-3.10 (b) (3) provides as follows:
“(3) Requirements for a professional certificate as a school district leader[2] in the educational leadership service. The candidate shall meet the requirements of subparagraph (i) of this paragraph or the alternative requirements of either subparagraph (ii) or (iii) of this paragraph.
“(i) The candidate shall meet the requirements in each of the following clauses:
“(a) Education. The candidate shall meet the following education requirements:
“(1) The candidate shall hold a master’s or higher degree from a regionally accredited higher education institution or an equivalently approved higher education institution as determined by the department; and
“(2) either:
*563 “(i) have successfully completed a New York State program leading to a professional certificate as a school district leader in the educational leadership service registered pursuant to section 52.21(c)(3) of this Title, or its equivalent as determined by the department. As part of the program completion requirements, the candidate shall have successfully completed at least 60 semester hours of graduate study, which may include graduate study completed prior to admission to the program, and achieved a satisfactory level of performance on the New York State assessment for school district leadership. The requirement of achieving a satisfactory level of performance on the New York State assessment for school district leadership shall be waived if the candidate completes the registered program prior to the availability of such New York State assessment. The department shall determine the date on which such assessment is available and required; or
“(ii) have successfully completed an educational leadership program outside of New York State that is equivalent to a program leading to a professional certificate as a school district leader in the educational leadership service registered pursuant to section 52.21(c)(3) of this Title, or an educational leadership program leading to a regular certificate in an equivalent title to school district leader, accredited by an accrediting body recognized by the United States Department of Education at a regionally accredited institution outside of New York State, including a requirement to pass an assessment equivalent to the New York State assessment for school district leadership, or alternatively the candidate shall satisfy this component of the educational leadership program by passing the New York State assessment for school district leadership. The requirement of achieving a satisfactory level of performance on an assessment equivalent to the New York State assessment for school district leadership or alternatively passing such New York State assessment shall be waived if the candidate completes the program prior to the availability of such New York State assessment. The department shall determine the date on which such assessment is available. The candidate shall have successfully completed at least 60 semester hours of graduate study, which may *564 include graduate study completed outside of the educational leadership program.
“(b) Experience. The candidate shall have successfully completed three years of classroom teaching service and/or educational leadership service and/or pupil personnel service experience in public or nonpublic schools N-12.
“(ii) Alternative route one, the alternative school district leader certification program. A candidate may qualify for a professional certificate as a school district leader through meeting the requirements in the alternative school district leader certification program for exceptionally qualified persons, as prescribed in section 80-5.15 of this Part.
“(iii) Alternative route two, the certification of exceptionally qualified persons through screening panel review. The Commissioner of Education, at the request of a board of education or board of cooperative educational services, may provide for the issuance of a professional certificate as a school district leader (superintendent of schools) to exceptionally qualified persons who do not meet all of the graduate course or school teaching requirements in subparagraph (i) of this paragraph, but whose exceptional training and experience are the substantial equivalent of such requirements and qualify such persons for duties of a superintendent of schools. Prior to the appointment of any such individual, the board must obtain the approval of the commissioner. In its formal request to the department the board must submit its resolution noting approval of the request, the job description, its rationale for requesting such certification of the individual, a statement identifying the exceptional qualifications of the candidate, the individual’s completed application for certification, vitae and official transcripts of collegiate study. The certificate, if issued, will be valid only for service in the district making request. The commissioner will refer the materials submitted by the board to a screening panel consisting of representatives of the department and appropriate educational organizations for review and advice.”
Petitioners’ Arguments
Petitioners argue as follows: (i) that Cathleen Black must pos sess a Master’s degree as a condition to being granted a Certifi *565 cate and that such condition cannot be waived by the respondents under either Education Law § 3003 (3) or 8 NYCRR 80-3.10 (b) (3) (iii); (ii) that the Commissioner improperly (without statutory or regulatory basis) relied on the qualifications of persons other than Ms. Black in determining that her qualifications were “substantially equivalent” to the specified requirements; and (iii) that the Commissioner’s Decision was arbitrary and capricious as he improperly determined that Ms. Black possessed “substantially equivalent” knowledge, skills and experience to those required by law.
Master’s Degree
Petitioners argue that Ms. Black must possess a Master’s degree as a condition to being granted a Certificate and that such condition cannot be waived by the respondents under either Education Law § 3003 (3) or 8 NYCRR 80-3.10 (b) (3) (iii). Petitioners argue that the Commissioner acted beyond his authority by granting a waiver to Ms. Black, asserting that
“[t]he Statute and Regulations distinguish between the requirement that a candidate possess a college and master’s degree and the requirement that the candidate successfully complete course work or a program. Black possesses a college degree, but she does not possess a master’s degree. Section 3003 (3) only allows an exception for a candidate who does not meet all the graduate course requirements, but it does not allow an exception for the lack of a master’s degree.” (Jeffries petition 11 47.)
Petitioners argue that Education Law § 3003 (3) permits an exception for a candidate who does not meet “all of the graduate course . . . requirements,” but that the Regulations (8 NYCRR 80-3.10 [b] [3] [i] [a] [1], [2] [i]) require that a candidate “hold a master’s or higher degree”; and also either “have successfully completed at least 60 semester hours of graduate study” as part of the required completion of a “New York State program leading to a professional certificate as a school district leader” or “have successfully completed at least 60 semester hours of graduate study” as part of the required completion of an “educational leadership program outside of New York State that is equivalent to a program leading to a professional certificate as a school district leader.” Petitioners argue that the Regulations (8 NYCRR 80-3.10 [b] [3] [iii]) authorize the Commissioner to waive the “graduate course requirements” but not the Master’s degree requirement.
*566 In response, respondents argue: (i) the Master’s degree is not a statutory requirement under Education Law § 3003; (ii) the statute provides that a candidate must have completed 60 semester hours in graduate courses, which requirement may be waived by the Commissioner; (iii) the Master’s degree referenced in the Regulations is intended to be obtained within the required 60 semester hours of the graduate course work requirement; and (iv) the waiver provision of the Regulations at issue (8 NYCRR 80-3.10 [b] [3] [iii]) provides for waiver to persons “who do not meet all of the graduate course or school teaching requirements in subparagraph (i) of this paragraph” and, as subparagraph (i) contains the Master’s degree requirement along with the 60 semester hours of graduate coursework, a plain reading of the Regulations provides that “graduate course . . . requirements” encompasses the Master’s degree requirements in subparagraph (i). Respondents also argue that under the Commissioner’s Regulations (8 NYCRR 52.2) a graduate degree may be obtained upon a “minimum of one academic year of full-time graduate level study, or its equivalent in part-time study, with an accumulation of not less than 30 semester hours”[3] and therefore, most candidates who have accumulated 60 semester hours of graduate study would have earned a Master’s degree. Accordingly, respondents argue that a holding for petitioner would result in the Legislature (by virtue of Education Law § 3003 [3]) permitting the Commissioner to grant a waiver to a candidate with exceptional qualifications who had not completed 60 semester hours of graduate study while the Regulations would prohibit the Commissioner from granting a waiver to a candidate without a Master’s degree which requires only half as many semester hours.
Respondents also note that the current Regulations, 8 NYCRR 80-3.10, were filed in June 2006, effective in July 2006 and amended in October 2007. Prior to such point, the Regulations in place, 8 NYCRR 80-2.4, provided, inter alia, that “[w]ithin *567 the total program of preparation, the candidate shall have been awarded a master’s degree” and that such language indicates that acquiring a Master’s degree was part of the “total program of preparation” of accumulating 60 semester hours of graduate study.
Initially, as recognized by all parties, Education Law § 3003 does not require that a Certificate candidate have attained a Master’s degree. The statute instead requires that a candidate “be a graduate of a college or university approved by the commissioner and in addition shall have completed sixty semester hours in graduate courses approved by the commissioner” and “have completed three years of teaching experience satisfactory to the commissioner in public or non-public schools.” (Education Law § 3003 [1] [a], [b].) While the statute requires graduate course study, the statute also provides in Education Law § 3003 (3) that the Commissioner may waive the graduate course or teaching requirements for exceptionally qualified persons.
It is in the Regulations that the Master’s degree requirement is found. 8 NYCRR 80-3.10 (b) (3) sets forth the requirements for a professional certificate as a school district leader in the educational leadership service and provides that “[t]he candidate shall meet the requirements of subparagraph (i) of this paragraph or the alternative requirements of subparagraph (ii) or (iii) or this paragraph.” Subparagraph (i) provides that a candidate shall meet the requirements in each of the following clauses and contains, inter alia, the requirement that the candidate shall hold a Master’s degree and either have successfully completed a program leading to a professional certificate as a school district leader which, as part of such requirements, mandates that a candidate have successfully completed at least 60 semester hours of graduate study, which may include graduate study completed prior to admission to the program. Subparagraph (i) also requires that the candidate have successfully completed three years of classroom teaching service and/or educational leadership service and/or pupil personnel service experience. Subparagraph (ii) provides an alternative method for certification which is not applicable here. Subparagraph (iii) provides, in pertinent part, the second alternative method stating that “exceptionally qualified persons” may be certified “who do not meet all of the graduate course or school teaching requirements in subparagraph (i) of this paragraph, but whose exceptional training and experience are the substantial equiva *568 lent of such requirements, and qualify such persons for duties of a superintendent of schools.”
The Commissioner, in his Decision, interpreted the statute and Regulations as permitting him to waive the Master’s degree requirement. In this article 78 proceeding, the court’s review is limited to whether, on the record before him, the Commissioner’s determination that Ms. Black need not posses a Master’s degree was arbitrary and capricious, lacked a rational basis or was affected by an error of law (see Matter of Board of Educ. of Monticello Cent. School Dist. v Commissioner of Educ., 91 NY2d 133, 139 [1997]; Matter of Viglietta v Mills, 39 AD3d 1119 [3d Dept 2007]). Further, to the extent the Commissioner is interpreting the Department of Education’s own Regulations, “[a]n agency’s interpretation of its own regulations is entitled to deference if that interpretation is not irrational or unreasonable. Put another way, the courts will not disturb an administrative agency’s determination unless it lacks any rational basis” (Matter of IG Second Generation Partners L.P. v New York State Div. of Hous. & Community Renewal, Off. of Rent Admin., 10 NY3d 474, 481 [2008] [internal quotation marks and citations omitted]; see also Matter of Board of Educ. of City School Dist. of City of N.Y. v Mills, 250 AD2d 122 [3d Dept 1998]).
Based on the record, the court does not find that petitioners met their burden of establishing that the Commissioner’s determination that Ms. Black be granted a Certificate despite her lack of a Master’s degree was irrational, and accordingly, not entitled to deference, or an error of law. Therefore, such claim is without merit.
Initially, the statute does not mandate that a candidate possess a Master’s degree, and, while it does require that a candidate have completed 60 semester hours in graduate courses approved by the Commissioner, it also specifically grants the Commissioner the authority to waive such graduate course requirements.
As to the Regulations (8 NYCRR 80-3.10 [b] [3]), such Regulations specify three alternative methods of attaining a Certificate. The first specifies educational and experiential requirements, including the possession of a Master’s degree, along with completion of a state program leading to a professional certificate which includes as a component the successful completion of at least 60 semester hours of graduate study. The third method permits the Commissioner to grant such Certificate to a qualified person who does not meet all of the graduate course or *569 school teaching requirements in subparagraph (i). Subparagraph (i) lists the educational and experiential requirements, including the Master’s degree requirement. Based on the record, it cannot be said to be irrational or unreasonable for the Commissioner, who is to be accorded deference when interpreting agency Regulations, to interpret the Master’s degree requirement[4] contained in subparagraph (i), and the 60 semester hours of graduate study, also required in subparagraph (i), as being waivable as “graduate course . . . requirements” under subparagraph (iii) of the Regulations. Further, in this case, the Commissioner’s interpretation of the implementing Regulations to allow for the waiver of the regulatory Master’s degree requirement is consistent with the language of the statute (see Matter of Bronx-Lebanon Special Care Ctr. v DeBuono, 269 AD2d 195, 196 [1st Dept 2000]; State of New York v Domes, 88 AD2d 1013 [3d Dept 1982]) which does not require a Master’s degree.
To the extent the petitioners argue that such interpretation by the Commissioner is contrary to other prior holdings of the Commissioner and therefore is arbitrary and capricious, it must be noted that (i) such assertion by petitioners was only raised in their reply papers, (ii) such determinations by the Commissioner were made under a different regulation, and (iii) the issue of waiver of the Master’s degree requirement was not present as the candidates in the prior holdings noted by the parties possessed a Master’s or equivalent degree. Additionally, in the (i) Matter of Board of Educ. of City School Dist. of City of N.Y. (Levy) (Jan. 14, 2000), (ii) Matter of Mayor of City of N.Y. (Klein) (Aug. 1, 2002), and (iii) Matter of Board of Educ. of City School Dist. of City of Yonkers (Hart) (Feb. 19, 2003) determinations, the Commissioner specifically stated, in discussing the candidates’ degree requirements, that though met by the candidates, the statutory requirement of a baccalaureate degree “cannot be met by substitution of other training or experience.” Such statement was not made with respect to the Commissioner’s discussions of the Master’s degree requirement.
“Substantial Equivalent” Analysis
(a) Reliance upon Others’ Qualifications
The Jeffries petitioners further allege that the Commissioner violated the law and exceeded his authority in granting a waiver *570 to Ms. Black by relying upon the knowledge, skills and experience of others in finding that Ms. Black’s training, background and experience are “substantially equivalent” to the certification requirements set forth in law.[5]
As stated above, Education Law § 3003 (3) provides that “[t]he commissioner, at the request of a board of education or board of cooperative educational services, may provide for the issuance of a certificate as superintendent of schools to exceptionally qualified persons who do not meet all of the graduate course or teaching requirements of subdivision one of this section, but whose exceptional training and experience are the substantial equivalent of such requirements and qualify such persons for the duties of a superintendent of schools.”
Petitioners are correct that neither the statute nor Regulations permit reliance by the Commissioner upon the qualifications of others in making the required assessment. Based upon the court’s review of the Commissioner’s Decision, however, the Commissioner does not do so. There is no assertion in the Decision that the Commissioner considered Mr. Polakow-Suransky’s qualifications in assessing Ms. Black’s qualifications. The Decision discusses in some detail the newly announced position of Senior Deputy Chancellor and Chief Academic Officer, and the responsibilities of said position, as well as, briefly, the knowledge and experience gained over the course of a distinguished teaching and leadership career by Mr. Polakow-Suransky. Such discussion, however, is clearly in the context of the Commissioner’s assessment of Ms. Black’s qualifications in light of the unique nature of the New York City School District:
“[i]n prior cases, the existence of an adequate support structure at the district level, or the lack thereof, has been a significant factor in the Commissioner’s decision to grant or deny a superintendent’s certificate. Ms. Black’s commitment to the appointment of a Senior Deputy Chancellor and Chief Academic Officer will substantially enhance *571 the existing statutory structure and current leadership support team at the New York City Department of Education.” (Decision at 11 [citations omitted].)
Accordingly, such claim is without merit.
(b) Commissioner’s Interpretation of Education Law § 3003 (3)
As part of his Decision, the Commissioner acknowledges that the context (i.e., the District) in which Ms. Black would serve was part of the certification analysis. In their reply papers, petitioners further argue that such contextual consideration is not authorized by law or regulation and that the Commissioner’s Decision, made in reliance upon this interpretation of the statute, made no analysis of whether Ms. Black’s background meets the “substantially equivalent” standard, and is, accordingly, without rational basis.
In creating the “waiver” provision of Education Law § 3003 (3), the Legislature vested in the Commissioner discretionary authority in determining the qualifications of individuals not meeting the graduate course or teaching requirements of section 3003 (1). Such discretion is limited by the requirements that the certificate may only be issued to one who is “exceptionally qualified,” whose “exceptional training and experience are the substantial equivalent of such requirements and qualify such persons for the duties of a superintendent of schools.” (Education Law § 3003 [3].) Prior Commissioners’ decisions have consistently stated this interpretation of the relevant phrase:
“substantial equivalence need not mean that, item for item, [the candidate’s] qualifications match precisely each regulatory requirement. Rather it means that, when taken as a whole, in the judgment of the Commissioner [the candidate’s qualifications] have prepared [the candidate] to do the job of superintendent of the New York City schools.” (Decision at 12, quoting Matter of Board of Educ. of City School Dist. of City of N.Y. [Levy], Jan. 14, 2000; see also Matter of Board of Educ. of City School Dist. of City of Yonkers [Hart], Feb. 19, 2003; see also Matter of Mayor of City of N.Y. [Klein], Aug. 1, 2002.)
The parties, unsurprisingly, differ on the issue of whether court deference to the Commissioner’s interpretation of the statute is appropriate under the circumstances. In matters of pure statutory construction, which do not implicate the *572 expertise of the agency, the courts do not accord deference to the agency’s interpretation (Matter of Batti v Town of Austerlitz, 71 AD3d 1260 [3d Dept 2010]). However, the phrase “but whose exceptional training and experience are the substantial equivalent of such requirements and qualify such persons for the duties of a superintendent of schools” incorporates multiple terms subject to further interpretation (e.g., “exceptional training and experience”; “substantial equivalent”; “qualify”) and therefore does not, in the opinion of the court, present an issue of pure statutory construction.
In Judd v Constantine, the Third Department set forth instances wherein judicial deference should be accorded an agency’s interpretation of a statute:
“(1) where the statute employs technical terms within the agency’s expertise, so that interpretation or application of legislative language entails understanding of underlying operational practices or . . . evaluation of factual data and inferences to be drawn therefrom; (2) where the general statutory language and legislative history indicate that the Legislature intended to adopt a broad policy approach to the subject matter of the statute, delegating to the administrative agency comprehensive, interpretive and subordinate policy-making authority, interstitially to fill in the blanks consistently with the overall policy of the statute, either by administrative rule making or case-by-case decisions; (3) where the agency participated in the legislative activity leading to the authorizing legislation and the agency’s interpretation of the statute is contemporaneous with enactment; and (4) where the agency’s interpretation has been long standing and unchallenged, inducing reliance thereon by those practicing before it” (153 AD2d 270,272-273 [3d Dept 1990] [internal quotation marks and citations omitted]).
The Court further noted:
“The most important underlying principles requiring deference are either when the nature of the legislation is such that the agency has a greater competence in interpreting the statute than the courts or when the policy-making function necessarily entailed in interpreting broad statutory language has been conferred by the Legislature on the agency and not the courts” (id. at 273 [citations omitted]).
*573 In light of Judd, the court must accord the Commissioner deference in the interpretation of the instant statute. First, the statute, by reference to determining “substantial equivalence” of requirements of graduation from approved institutions of higher learning and the completion of graduate courses “approved by the commissioner,” as well as to “three years of teaching experience satisfactory to the commissioner” (Education Law § 3003 [1] [a], [b]), employs references which specifically contemplate the exercise of the Commissioner’s expertise. Second, the statute delegates the administrative agency comprehensive, interpretive and subordinate policy-making authority by the granting of discretionary authority to make case-by-case decisions. Third, as noted above, the Commissioner’s interpretation has been consistently applied in the previous Commissioner’s decisions;[6] it bears noting that this interpretation has been utilized in decisions where the Commissioner has and has not granted a Certificate.
Further, the interpretation utilized by the Commissioner in the instant decision appropriately considers the purpose of Education Law § 3003 (3), which grants the policy-making function necessarily entailed in interpreting broad statutory language by conferring upon the Commissioner the discretion to assess the ability of the candidate to function as a superintendent.
Also, the Commissioner’s interpretation of the statute is not without rational basis. Viewing the “qualify” provision as a direction to assess the “substantial equivalent” test in the context of the applying district accomplishes this goal of the Legislature. Finally, petitioners’ interpretation would lead to the anomalous result of the instant candidate being found, in the Commissioner’s expert opinion, to possess exceptional training and experience such that she is qualified for the duties of a superintendent of schools, and yet be denied the Certificate.
Finally, the interpretation promulgated by the Commissioner, by allowing for a case-by-case analysis in light of the specific district applying, appropriately contemplates the differences in duties and responsibilities between those of the various superintendent of schools positions in school districts throughout the *574 state, none more so, obviously, than that of the New York City School District, the vast size and accompanying support structure of which does not allow for reasonable comparison to the other districts of the state. Finally, the language of the Regulations gives some support to this construction, as it provides that “[t]he certificate, if issued, will be valid only for service in the district making the request.” (8 NYCRR 80-3.10 [b] [3] [iii].)
Based upon the above, the court finds that the Commissioner’s determination does not suffer from an error of law in the application of his interpretation of the waiver provision set forth in Education Law § 3003 (3). Accordingly, the court will assess petitioners’ claim that the Commissioner’s Decision is arbitrary and capricious in light of this interpretation of the statute.
(c) Arbitrary and Capricious Analysis
Petitioners further argue that the Commissioner’s determination that Ms. Black’s exceptional training and experience are the substantial equivalent of certification requirements set forth in law and qualify her to receive a Certificate was arbitrary and capricious as a matter of law, an abuse of discretion, and had no rational basis. Petitioners assert that the Decision acknowledges that Ms. Black is lacking in critical areas necessary to perform the job of Chancellor as set forth in the statute and Regulations and argue that the Decision is therefore arbitrary and capricious as Ms. Black does not meet the substantial equivalent requirement on her own merit.
The standard to be applied by the court when reviewing an administrative determination is “severely limited” to the issue of whether the determination was arbitrary and capricious, i.e., whether there was no rational basis for the decision (see Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753 [1991]; see also Matter of Johnson v Ambach, 74 AD2d 986, 987 [3d Dept 1980]). “It is well settled that a court may not substitute its judgment for that of the board or body it reviews unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 232 [1974] [citations omitted]). Furthermore, “in reviewing an administrative determination [a court’s] role is not to ‘reweigh the factors and substitute [its] judgment for that of the *575 agency’ ” (Matter of Eastern Niagara Project Power Alliance v New York State Dept. of Envtl. Conservation, 42 AD3d 857, 861 [3d Dept 2007], quoting Matter of Gallo v State of N.Y., Off. of Mental Retardation & Dev. Disabilities, 37 AD3d 984, 985 [3d Dept 2007]). This rule applies even where a different conclusion could be reached on the same evidence (see Matter of Clapes v Tax Appeals Trib. of State of N.Y., 34 AD3d 1092, 1094 [3d Dept 2006], appeal dismissed 8 NY3d 975 [2007]). It is well established that the very limited standard which governs judicial review of administrative determinations pursuant to article 78 is whether the determination was arbitrary and capricious, and that a reviewing court is therefore restricted to an assessment of whether the action in question was taken “without sound basis in reason and . . . without regard to the facts” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). Moreover, in order to maintain the limited nature of this review, it is incumbent upon the court to defer to the agency’s construction of the statutes and regulations that it administers as long as that construction is not irrational or unreasonable (Matter of Metropolitan Assoc. Ltd. Partnership v New York State Div. of Hous. & Community Renewal, 206 AD2d 251 [1st Dept 1994]). “[When] the judgment of the agency involves factual evaluations in the area of the agency’s expertise and is supported by the record, such judgment must be accorded great weight and judicial deference.” (Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363 [1987].)
The Decision, in applying the waiver statute to the application of the Mayor, reviews in detail the “knowledge and skills that Ms. Black would have acquired had she followed the traditional preparation route to certification,” followed by the skills required in light of the unique nature of the particular position at issue (Decision at 7-9), and goes on to specifically find that Ms. Black’s lifetime of experience (again, reviewed in detail), much of which was at the highest levels of the private business world in the publishing field, demonstrated such skills, that is, the ability to lead a large multi-faceted organization confronting enormous challenges and complexities, and thereby met the requirements of Education Law § 3003 (3).
In discussing the knowledge and skills Ms. Black would have acquired under the traditional preparation route, the Commissioner reviewed the graduate course work in the areas of educational leadership and the certification of school district *576 leaders as well as the skills to be gained through the supervised leadership requirement and the teaching experience requirement.[7]
Conducting his analysis of the substantial equivalent requirement consistently with his interpretation of the mandates of the waiver provision, the Commissioner particularly notes and analyzes the unique challenges of the position, discussing the immense size of the District and the commensurate issues involved. Taking into account the City’s statutory support structure of subordinate superintendents (the only District in the state with such support) as well as the creation of the new position of Senior Deputy Chancellor and Chief Academic Officer, the Commissioner reasons that the District requires a leader with exceptional leadership experience, communication, negotiation, collaboration and dispute resolution skills, as well as experience with managing limited resources and making difficult financial decisions, including financial management and capital construction decisions. In short, the Commissioner reasons that the unique needs of the District would best be served by an experienced and capable chief executive officer.
The Commissioner then continues to discuss in detail Ms. Black’s particular experiences and strengths that would qualify her for certification in light of the duties of the New York City School District Chancellor position, detailing Ms. Black’s long and successful career, throughout which she has demonstrated leadership vision and managerial skill, in addition to her substantial and effective commitment to the community at large. The Commissioner finally acknowledges that Ms. Black lacks knowledge or experience in certain enumerated critical areas, all based, upon the court’s review, upon Ms. Black’s lack of background in the educational field, but, consistent with past decisions and the advice received from the panel, also considers the structure of the District in determining that she nonetheless meets the waiver requirements.
It is indisputable that the question presented to the Commissioner herein is one which, even given the interpretation utilized by the Commissioner and granted deference by the *577 court, can be answered in the negative based upon a fair review of Ms. Black’s training, education and experience. In particular, the court notes that the eight-person screening panel appointed by the Commissioner pursuant to 8 NYCRR 80-3.10 (b) (3) (iii) apparently split on their final recommendation[8] to the Commissioner regarding the within application. It is further indisputable that the statute and the Regulations grant substantial discretion to the Commissioner in the instant determination; in the opinion of the court, the granting of such discretion by act of the Legislature clearly contemplates that the Commissioner, by virtue of his position including, but not limited to his daily experience in the administration of the state educational system and individual school systems therein, is best qualified to make the determination herein. The instant Decision fully weighs the qualifications of Ms. Black, including the alleged deficiencies in her background and experience, in light of the unique nature of the District, and reaches a conclusion based on such careful consideration of all the relevant factors. Where, as here, the Commissioner’s Decision was factually supported and not without a rational basis, the court will not substitute its judgment regarding the certification.
Accordingly, such claim is without merit.
Petitioners further argue that the Commissioner’s determination was arbitrary and capricious in treating Ms. Black’s determination differently than that of Robert Wagner, Jr. in 1983. As such argument was proffered solely in their reply papers, and is not responsive to any argument in the answer, it is not properly before the court and will not be considered herein.
Petitioners’ remaining contentions have been considered and are found to be without merit.
Based on the foregoing, it is hereby ordered that the petitions are in all respects denied.

. The Commissioner cited to Education Law § 2590-h which provides, in pertinent part, that
“[t]he office of chancellor of the city district is hereby continued. Such chancellor shall serve at the pleasure of and be employed by the mayor of the city of New York by contract. . . . The chancellor shall have the following powers and duties as the superintendent of schools and chief executive officer for the city district.”

. The Regulations provide (8 NYCRR 80-3.10 [b]) as follows: “(b) School district leader. (Superintendent of schools, district superintendent, deputy superintendent, associate superintendent and any other person having responsibilities involving general district-wide administration, except a person serving as a school district business leader, shall hold this certificate.)”

. 8 NYCRR 52.2 (c) (8) provides that
“Master’s degree programs shall normally require a minimum of one academic year of full-time graduate level study, or its equivalent in part-time study, with an accumulation of not less than 30 semester hours. Research or a comparable occupational or professional experience shall be a component of each master’s degree program. The requirements for a master’s degree shall normally include at least one of the following: passing a comprehensive test, writing a thesis based on independent research or completing an appropriate special project.”

. The Master’s degree requirement, as stated above, is defined in other Education Department Regulations as requiring not less than 30 semester hours.

. “Rather than rendering a decision on the qualifications of Ms. Black in the field of education as required, Respondent Steiner misread Section 3003 (3) as allowing him to determine whether a candidate has ‘substantially equivalent’ educational qualifications by relying upon the educational qualifications of the staff the candidate is to supervise.” (Petition U 44.)

. While the Third Department in the Batti case cited by the petitioners did not accord deference despite a consistent prior interpretation by the Comptroller, the Court held there that at issue was a matter of pure statutory construction, not implicating the Comptroller’s expertise, such that his interpretation is not entitled to judicial deference.

. As noted in the petitioners’ original memorandum of law, the Commissioner’s Regulations broaden the range of experience qualifying as the three years of teaching experience referenced in Education Law § 3003 (1) (b) to include three years of “educational leadership service and/or pupil personnel service experience in public or non-public schools” (8 NYCRR 80-3.10 [b] [3] [i] [6]). Petitioners evince no opposition to this regulation.

. As the Regulations call only for the panel to review and advise upon the material submitted by the school district, a clear final recommendation to the Commissioner is not required.