Matter of Catskill Heritage Alliance, Inc. v New York State Dept. of Envtl. Conservation (2018 NY Slip Op 02516)





Matter of Catskill Heritage Alliance, Inc. v New York State Dept. of Envtl. Conservation


2018 NY Slip Op 02516


Decided on April 12, 2018


Appellate Division, Third Department


Mulvey, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 12, 2018

524617

[*1]In the Matter of CATSKILL HERITAGE ALLIANCE, INC., et al., Appellants,
v
NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents.

Calendar Date: February 14, 2018

Before: Egan Jr., J.P., Clark, Mulvey, Aarons and Rumsey, JJ.


Braymer Law, PLLC, Glens Falls (Claudia K. Braymer of counsel), for appellants.
Eric T. Schneiderman, Attorney General, New York City (Andrew G. Frank of counsel), for New York State Department of Environmental Conservation, respondent.
Whiteman Osterman & Hanna LLP, Albany (John J. Henry of counsel), for Crossroads Ventures LLC, respondent.


Mulvey, J.

Appeal from a judgment of the Supreme Court (Ryba, J.), entered December 7, 2016 in Albany County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of the Commissioner of Environmental Conservation canceling an adjudicatory hearing and remanding the matter for
the issuance of final permits.
In 1999, respondent Crossroads Ventures LLC submitted applications to respondent Department of Environmental Conservation (hereinafter DEC) for various permits required for the proposed construction of a resort known as the Belleayre Resort at Catskill Park. As originally conceived, the project consisted of two separate development components, known as Big Indian Plateau and Wildacres, situated on approximately 1,960 acres of land owned by Crossroads in the adjacent Towns of Middletown, Delaware County and Shandaken, Ulster County. DEC, as the lead agency for environmental review under the State Environmental Quality Review Act (see ECL art 8), issued a positive declaration and required Crossroads to [*2]submit a draft environmental impact statement (hereinafter EIS) for the project. Crossroads submitted the draft EIS in 2003 and, following public hearings and a public comment period, the project was referred to an Administrative Law Judge (hereinafter ALJ) for an issues conference to determine whether any issues impacting the environment should advance to an adjudicatory hearing (see 6 NYCRR 624.4 [b] [2]). Following an issues conference that spanned 18 days and included the participation of numerous groups and entities,[FN1] the ALJ issued a ruling identifying 12 issues that he deemed to be both "substantive and significant" and, thus, qualified for adjudication (6 NYCRR 624.4 [c] [1] [iii]). Upon administrative appeal, the Deputy Commissioner of Environmental Conservation [FN2] issued an interim decision that upheld the ALJ's ruling with regard to six of the issues identified for adjudication, but removed the remaining six issues from adjudication. Following this ruling, certain parties, including some of the petitioners herein, moved for reconsideration of that portion of the interim decision that removed the issue of community character from adjudication.
Thereafter, the parties to the issues conference and the state entered into negotiations in an attempt to develop a revised project design that would address and mitigate the environmental issues identified in the interim decision. Such negotiations culminated in a 2007 Agreement in Principle (hereinafter AIP), pursuant to which Crossroads agreed to replace the originally proposed project with a substantially scaled-back, lower-impact alternative version (hereinafter the modified project)[FN3]. The modified project set forth in the AIP entirely eliminated the Big Indian Plateau development and contained significant modifications to the Wildacres development including, among other things, elimination of the originally proposed golf course and 21-lot residential subdivision, as well as implementation of enhanced stormwater management and monitoring protocols. The modified project also called for the development of a smaller facility, known as Highmount Spa Resort, on the eastern side of the project site. In light of the significant changes to the project and the additional environmental review to be performed under the AIP, Crossroads moved to suspend the adjudicatory hearing and to stay the pending motion for reconsideration of the interim decision. Such motion was subsequently granted by the Commissioner of Environmental Conservation.
In 2013, as contemplated by the AIP, Crossroads supplied DEC with a supplemental draft EIS and revised permit applications together with additional proposed commitments and conditions that Crossroads had agreed to incorporate into the modified project. Following a legislative hearing and a public comment period on the modified project, DEC moved to cancel [*3]the adjudicatory hearing on the ground that the changes to the project, and the additional environmental protections agreed to by Crossroads, rendered the issues that had been previously identified as requiring adjudication either moot or no longer substantive and significant, and that any new issues raised by the modified project did not necessitate an adjudicatory hearing. DEC also moved to dismiss the previously suspended motion for reconsideration of the interim decision. Petitioner Catskill Heritage Alliance, Inc. opposed the motion and cross-moved to reconvene the issues conference, and several others who owned land in the vicinity of the project moved for party status (see 6 NYCRR 624.5 [b] [2]).
In July 2015, the Commissioner issued a detailed, 42-page determination resolving the numerous issues addressed in the various motions and granting the motion to cancel the adjudicatory hearing. Preliminarily, the Commissioner held that, contrary to the arguments raised in opposition to DEC's motion, he had the authority to rule on the pending motions rather than requiring them to be heard and decided by an ALJ in the first instance. With regard to the merits, the Commissioner concluded that the six issues that had previously been identified for adjudication in the 2006 interim decision were either moot or had otherwise been addressed and resolved by the modified project, and that petitioners failed to satisfy their burden of demonstrating that any new issues with regard to the modified project were "substantial and significant" within the meaning of the governing regulations so as to mandate an adjudicatory hearing. Finally, the Commissioner denied the motion for reconsideration of that portion of the interim decision removing the issue of community character from adjudication. The Commissioner then remanded the matter to DEC staff for completion of the environmental review process and the issuance of the final permits for the project, which occurred in December 2015.[FN4]
Petitioners commenced this combined CPLR article 78 proceeding and action for declaratory judgment seeking to annul the Commissioner's determination. In a decision that scrupulously addressed the various procedural and substantive issues raised, Supreme Court found that the Commissioner's determination was in all respects rational and supported by the well-developed record. The court accordingly dismissed the petition, and this appeal by petitioners ensued.
Petitioners' challenges to the Commissioner's authority to rule on DEC's motion to cancel the adjudicatory hearing are without merit. It is settled that administrative agencies have the inherent authority to reconsider a prior determination upon a change in circumstances or new information (see Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269, 277 [1972]; Matter of Town of N. Elba v New York State Dept. of Envtl. Conservation, ___ AD3d ___, ___, 2018 NY Slip Op 01369, *3-4 [2018]; Matter of Global Cos. LLC v New York State Dept. of Envtl. Conservation, 155 AD3d 93, 99 [2017], lv denied 30 NY3d 913 [2018]), or where the original determination is not final (see Matter of Hamptons Hosp. & Med. Ctr. v Moore, 52 NY2d 88, 93 [1981]; Matter of Murray v Scully, 170 AD2d 829, 831 [1991], lv denied 78 NY2d 856 [1991]). Here, the gravamen of DEC's motion was that an adjudicatory hearing was no longer warranted in light of the negotiations of the parties and the significant modifications to the project that were undertaken during the nine years since the issuance of the 2006 interim decision, all of which were specifically designed to address the issues identified for adjudication therein. In light of these changed circumstances, the Commissioner rationally treated DEC's motion as one for reconsideration of the nonfinal, 2006 interim decision (see [*4]Matter of Global Cos. LLC v New York State Dept. of Envtl. Conservation, 155 AD3d at 99-100; compare Matter of Town of N. Elba v New York State Dept. of Envtl. Conservation, 2018 NY Slip Op 01369 at *4).
With regard to petitioners' assertion that the motion had to be addressed and decided by an ALJ in the first instance, we initially observe, as did the Commissioner, that nothing in the governing regulations requires a motion for reconsideration of a prior interim decision of the Commissioner to be subjected to such a two-tiered level of review. Further, under the Environmental Conservation Law, it is the Commissioner alone that is vested with the authority to evaluate the environmental impacts associated with a requested permit (see ECL 3-0301 [1] [b]) and to hold administrative hearings (see ECL 3-0301 [2] [h]). While the statute authorizes the Commissioner to delegate these powers to other DEC officers and employees (see ECL 3-0107), the relevant delegation of authority in effect at the time of the determination at issue specified that "nothing [therein] shall limit [the Commissioner's] authority to convene or conduct hearings or to make or render determinations or decisions." Moreover, to the extent that the governing regulations provide for submission of motions to an ALJ in the first instance, such regulations also expressly provide that "[t]o avoid prejudice to any party, . . . any . . . rule may be modified by the [C]ommissioner upon recommendation of the ALJ or upon the [C]ommissioner's initiative" (6 NYCRR 624.6 [g]). Given this authority, the Commissioner rationally determined that, if for no other reason, the exercise of his authority to rule on the motion to cancel the adjudicatory hearing rather than remitting the matter to an ALJ was necessary to avoid unnecessary delay and expense in an already protracted 16-year administrative process. For these reasons, we discern no basis upon which to disturb the Commissioner's determination that he possessed the authority to rule on DEC's motion to cancel the adjudicatory hearing.
We now turn to petitioners' contention that the determination to cancel the adjudicatory hearing was arbitrary and capricious and lacked a rational basis. In that regard, petitioners argue that the Commissioner erred in finding that the modifications to the project eliminated the need for an adjudicatory hearing on the issues of stormwater and feasible alternative designs and layouts that had previously been identified for adjudication in the interim decision. Petitioners further challenge the Commissioner's decision to deny the application to reconsider that aspect of the interim decision that removed the issue of community character from adjudication. Lastly, petitioners assert that the Commissioner irrationally concluded that the modified project raised no new "substantive and significant" issues requiring adjudication.
Where, as here, there is no dispute between DEC staff and the permit applicant, adjudication is required only if the issue is "both substantive and significant" (6 NYCRR 624.4 [c] [1] [iii]; see 6 NYCRR 621.8 [b]). "An issue is substantive if there is sufficient doubt about the applicant's ability to meet statutory or regulatory criteria applicable to the project, such that a reasonable person would require further inquiry" (6 NYCRR 624.4 [c] [2]). "An issue is significant if it has the potential to result in the denial of a permit, a major modification to the proposed project or the imposition of significant permit conditions in addition to those proposed in the draft permit" (6 NYCRR 624.4 [c] [3]). "The resolution of whether an issue is substantive and significant requiring an adjudicatory hearing is left to the Commissioner and will not be disturbed absent a showing that it is predicated upon an error of law, is arbitrary or capricious, or represents an abuse of discretion" (Saratoga Water Servs. v Zagata, 247 AD2d 788, 789-790 [1998] [internal quotation marks and citations omitted]; accord Matter of Gracie Point Community Council v New York State Dept. of Envtl. Conservation, 92 AD3d 123, 129 [2011], lv denied 19 NY3d 807 [2012]; see Matter of Raritan Baykeeper, Inc. v Martens, 142 AD3d 1083, 1096 [2016]; Matter of Eastern Niagara Project Power Alliance v New York State Dept. of Envtl. Conservation, 42 AD3d 857, 861 [2007]). Further, where "'the judgment of the agency [*5]involves factual evaluations in the area of the agency's expertise and is supported by the record, such judgment must be accorded great weight and judicial deference'" (Matter of Gracie Point Community Council v New York State Dept. of Envtl. Conservation, 92 AD3d at 129, quoting Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363 [1987]; see Matter of Infante v Dignan, 12 NY3d 336, 341 [2009]).
The Commissioner's conclusion that the issues of stormwater and feasible alternative designs and layouts no longer required adjudication was neither irrational nor arbitrary and capricious. There is no dispute that Big Indian Plateau presented the greatest concern with regard to potential stormwater impacts and that the elimination of the development proposed for Big Indian Plateau concomitantly served to eliminate the stormwater concerns associated with that component of the project. With regard to the remaining stormwater issues identified in the interim decision, the record reflects that, following the interim decision and in accordance with the AIP, Crossroads agreed to implement a number of design features intended to mitigate impacts from stormwater runoff, including the near elimination of roads and detached lodging units on slopes of greater than 20% and the use of more traditional stormwater controls such as retention ponds. The expert affidavits and stormwater analyses submitted by DEC established that, through these and other measures, the stormwater management system developed for the modified project conformed to applicable design standards, was designed "to attenuate the post-development peak rate of runoff for the [10] and 100[-]year storm to pre-development rates," and would therefore result in a discharge rate that is at or below the rate of discharge under existing conditions. Evidence was also presented that the modified project would satisfy all runoff reduction, channel protection and green infrastructure requirements.
With respect to alternative designs, the interim decision required Crossroads to provide a supplemental EIS detailing the environmental effects of two alternative layouts — specifically, an "east resort [Big Indian Plateau]/west resort [Wildacres only] alternative" and a one golf course and one hotel complex alternative — as well as any feasible smaller scale alternatives. The Commissioner found, and petitioners do not dispute, that the complete elimination of the Big Indian Plateau portion of the project rendered moot the directive to consider alternate layouts of Big Indian Plateau, and also satisfied the requirement for consideration of a single golf course alternative since this became a feature of the modified project. As for the interim decision's directive to consider other smaller scale project alternatives and layouts, the supplemental EIS set forth a comprehensive analysis comparing the original project to the modified project, which identified the numerous environmental impacts that had been eliminated or greatly reduced as a result of the modified project while underscoring the significant reduction in the overall size and scope of the project as a whole. The supplemental EIS further addressed an alternate layout, proposed under the AIP, that differed slightly from the modified project and detailed the various environmental impacts avoided by rejection of this alternative in favor of the modified project. Finally, the supplemental EIS set forth an extensive environmental analysis of a "Wildacres Resort only" alternative and concluded that the complete elimination of the Highmount Resort would render the entire project economically infeasible, while only modestly reducing negative environmental impacts. Given the deference due to the Commissioner under these circumstances and mindful that "our role is not to reweigh the factors and substitute our judgment for that of" the agency (Matter of Village of Woodbury v Seggos, 154 AD3d 1256, 1261 [2017] [internal quotation marks, brackets and citations omitted]; see Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 232 [2007]), we conclude that the Commissioner's determination that the previously identified issues of stormwater and feasible project alternatives had been adequately addressed and did not require an adjudicatory hearing was by no means irrational (see Matter of Riverkeeper, Inc. v New York State Dept. of Envtl. Conservation, 152 AD3d 1016, 1018 [2017]; Matter of Raritan Baykeeper, Inc. v Martens, 142 AD3d at 1085-1086; [*6]Matter of Gracie Point Community Council v New York State Dept. of Envtl. Conservation, 92 AD3d at 129; Matter of Regional Action Group for Envt. v Zagata, 245 AD2d 798, 800 [1997], lvs denied 91 NY2d 811 [1998]).
Nor do we find any reason to disturb the denial of the application to reconsider that aspect of the interim decision that removed the issue of community character from adjudication. Contrary to petitioners' contention, the Deputy Commissioner's finding that an adjudicatory hearing was unnecessary on this issue was not based solely upon the deference that he afforded to the standard of community character established by local land use plans, but was also grounded upon the extensive three-day evaluation of that issue during the issues conference. To the extent that petitioners argue that no reliance should be given to local land use plans in assessing community character, we note that their position is this regard is both unsupported as well as contrary to DEC's own prior precedent (see Matter of Red Wing Properties, Inc., 2010 WL 3366172, *6, 2010 NY Env LEXIS 31, *14-17 [May 19, 2010]; Matter of William E. Dailey, Inc., 1995 WL 394546, *7, 1995 NY Env LEXIS 14, *18 [June 20, 1995]; see generally Matter of Charles A. Field Delivery Serv. [Roberts], 66 NY2d 516, 517 [1985]). Inasmuch as petitioners failed to demonstrate a basis for reconsideration of the finding that the issue of community character was not subject to adjudication (see generally Matter of Town of N. Elba v New York State Dept. of Envtl. Conservation, 2018 NY Slip Op 01369 at *3-4; cf. Greene Major Holdings, LLC v Trailside at Hunter, LLC, 148 AD3d 1317, 1318-1319 [2017]), the motion was properly denied.
Petitioners' contention that the Commissioner irrationally determined that the modified project did not give rise to any new substantive and significant issues related to stormwater management and visual impacts is likewise unconvincing. With regard to stormwater management, petitioners claim that adjudicative issues exist concerning stormwater flow through two culverts on the Highmount development and an increased volume of runoff caused by unusually extreme weather events. In rejecting these arguments, the Commissioner first observed that petitioners failed to identify any legal authority requiring evaluation of weather events of greater magnitude than the "100[-]year storm event." Moreover, the Commissioner grounded his finding that the proposed stormwater management system did not present any substantive and significant issue for adjudication upon his review of the proffered environmental analyses and studies, which established that the proposed system would achieve runoff rates that were equal to or below existing conditions and satisfied the requirements for mitigation of storm events set forth in the New York State Stormwater Management Design Manual, as well as those imposed by the New York City Department of Environmental Protection. As Supreme Court aptly observed, the Commissioner's resolution of this issue involved factual assessments within his field of expertise and, inasmuch as his determination in that regard is both rational and supported by the record, it will not be disturbed (see Matter of Village of Woodbury v Seggos, 154 AD3d at 1261; Matter of Gracie Point Community Council v New York State Dept. of Envtl. Conservation, 92 AD3d at 128-129; Matter of Eastern Niagara Project Power Alliance v New York State Dept. of Envtl. Conservation, 42 AD3d at 859-860).
We reach a similar conclusion with regard to the claimed issue of visual impacts of the modified project upon the nearby Galli-Curci Mansion, which is listed on the National and State Registers of Historic Places. Contrary to petitioners' contention, the Commissioner did not improperly defer to the finding of the Office of Parks, Recreation and Historic Preservation (hereinafter OPRHP) that no adverse impacts would result to the historic property as a consequence of the modified project. Instead, the Commissioner recognized that DEC complied with its statutory obligation to consult with OPRHP concerning any adverse impacts that the project may have upon property within its jurisdiction (see PRHPL 14.09 [1]; 6 NYCRR 621.3 [*7][a] [8]) and considered OPRHP's findings as they related to the Galli-Curci Mansion, as he was entitled (see Matter of Cathedral Church of St. John the Divine v Dormitory Auth. of State of N.Y., 224 AD2d 95, 101-102 [1996], lv denied 89 NY2d 802 [1996]; Matter of Citizens for Clean Air v New York State Dept. of Envtl. Conservation, 135 AD2d 256, 260 [1988], lv dismissed 72 NY2d 853 [1988]). In addition to OPRHP's findings, the Commissioner also considered the statements of petitioners' expert, the results of a visual impact assessment contained in the supplemental EIS that revealed no visual impact issues and an additional visual impact analysis specifically addressing the Galli-Curci Mansion, which demonstrated that intervening topography and vegetation would visually screen the modified project. These materials furnished a rational basis for the Commissioner's determination that petitioners failed to raise any substantive and significant visual impact issue requiring adjudication (see Matter of Riverkeeper, Inc. v New York State Dept. of Envtl. Conservation, 152 AD3d at 1018; Matter of Raritan Baykeeper, Inc. v Martens, 142 AD3d at 1085-1086; Matter of Gracie Point Community Council v New York State Dept. of Envtl. Conservation, 92 AD3d at 129).
Petitioners' remaining contentions, to the extent not specifically addressed herein, are either unpreserved for our review or have been fully reviewed and found to be without merit.
Egan Jr., J.P., Clark, Aarons and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: These entities included, among others, Crossroads, DEC staff, the New York City Department of Environmental Protection, Delaware County, the Towns of Middletown and Shandaken, the Sierra Club and the Catskill Preservation Coalition, the latter of which is comprised of various environmental groups including petitioner Catskill Heritage Alliance, Inc.

Footnote 2: The then-Acting Commissioner of Environmental Conservation had delegated her authority to the Deputy Commissioner for purposes of ruling on the administrative appeal.

Footnote 3: The AIP was signed by the state and all but four of the parties to the issues conference. DEC, as the agency responsible for approval and oversight of the proposed project, did not sign the AIP, nor did any of the petitioners herein.

Footnote 4: Petitioners' appeal from the issuance of these permits is currently pending before this Court.