Jones, J.
We hold that it was error as a matter of law for the lower courts in this case to ground determination of the location of the high-water line along the southern shore of Shinnecock Bay and thus the location of the northern boundary of appellant’s property in the Town of Southampton by reference to the type-of-grass test introduced by respondent town.
It is not seriously disputed in formulation that the northern boundary line of appellant’s property facing on Shinnecock Bay is the high-water line. The lower courts so held and we concur. The sharp dispute between the parties, joined by others asserting a broad interest in the outcome, is as to the method or proof by which the high-water mark shall be precisely located on the land. In our perception and analysis of the problem it is misleadingly simplistic to conclude that resolution of this issue turns on the results of an exhaustive scientific search for the precise line of average high-water. No legal significance attaches to the exact identification along *296 this portion of the south shore of Long Island of refined hydrographic data. The issue placed before the courts in this litigation is a more practical, less sophisticated determination —location of the boundary line of property, title to which has passed from owner to owner until it has now vested in appellant.
Other aspects of the dispute between appellant’s predecessor in title and the Town of Southampton with respect to ownership of the property in question were compromised by a survey and exchange of deeds at the turn of the century. We see no warrant, however, for disturbing the conclusion of the trial court, now affirmed at the Appellate Division, that the resolution of differences reached in 1899 did not extend to or touch on the location of the northern, Shinnecock Bay boundary of the property.
Attaching real significance as we do to the importance of stability and predictability in matters involving title to real property, we hold that the location of the boundary to this shore-side property depends on a combination of the verbal formulation of the boundary line — i.e., the high-water line— and the application of the traditional and customary method by which that verbal formulation has been put in practice in the past to locate the boundary line along the shore. To accept the linguistic definition but then to employ an entirely new technique, however intellectually fascinating, for the application of that definition, with the result that the on-the-site line would be significantly differently located, would do violence to the expectations of the parties and introduce factors never reasonably within their contemplation. Thus, to recognize, as the town’s argument must, that the type-of-grass test for location of the high-water mark may one day be replaced by an even more sophisticated and refined test for determining the high-water line, with a consequent shift again in the on-the-site location of a northern boundary line, is to introduce an element of uncertainty and unpredictability quite foreign to the law of conveyancing.
The evidence in this case was really not disputed that prior to this litigation it had been normal practice to locate the high-water line by reference to the line of vegetation. If a change is to be made in the procedures for locating shore-side boundary lines to conform more precisely to hydrographic data, in our view, such innovation should be left to the Legislature.
*297 There was uncontroverted testimony here that it was the long-standing practice of surveyors in the Town of Southampton to locate shore-line boundaries by reference to the line of vegetation. To give effect to such uniform practice is not, as the town contends, to delegate arbitrary powers to surveyors to determine property lines; rather it is the obverse, namely, to recognize that property lines are fixed by reference to longtime surveying practice. The Attorney-General has recognized the authenticity of the practice (33 NY State Dept Rep 415, 421). In Town of Southampton v Mecox Bay Oyster Co. (116 NY 1, 16) in interpreting the language of the Dongan Patent, we wrote: "Even though it be susceptible of the meaning claimed for it by the appellant, the strict letter of the instrument must now give way to the practical construction adopted and acted upon by the inhabitants of the town. Upon such construction. all the private titles to lands within the town rest, and, as has been appropriately said in the brief of the learned counsel for the respondent: 'Courts should not undertake to reverse the action and tradition of centuries, and change titles which have become vested under contrary views’.” The controlling principle here is that of which we wrote in Heyert v Orange & Rockland Utilities (17 NY2d 352, 363): "Whatever the rule might be if this were a case of first impression, it is certain that thousands of deeds conveying rights of way between private parties and instruments of dedication of public highways have been made on this rule, which has existed since the common law began in this State and which received its most recent expression unequivocally in this court in 1959. It has ripened into a rule of property which cannot be changed retrospectively without altering the substance of prior land grants.”
Accordingly, we hold that it was error here to rely on independent, novel means for location of the high-water mark. The case should be remitted for the limited purpose of determining the location of the northern boundary of the property by reference to the line of vegetation.
We have examined appellant’s other contentions with respect to the trial court’s determination that there is an easement in favor of the public between the high-water mark of the Atlantic Ocean and the southerly top edge of the sand dunes and appellant’s related argument that by the adjudication upholding such easement it was deprived of property without due process of law, and find them to be without merit.
*298 The order of the Appellate Division should be modified to direct remittal to the Supreme Court, Suffolk County, to determine the northern boundary line of the property by reference to the line of vegetation, and, as so modified, the order should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Ftjchsberg and Cooke concur.
Order modified, without costs, and case remitted to Supreme Court, Suffolk County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.