[20 NYS3d 367]

HARVEY GESSIN et al., Respondents, v ANNA THRONE-HOLST et al., Defendants, and FRED HAVEMEYER et al., Appellants.

Second Department, September 23, 2015

APPEARANCES OF COUNSEL

*Cahn & Cahn, LLP*, Huntington (*Richard C. Cahn* of counsel), for appellants.

*J. Lee Snead*, Bellport, for respondents.

**OPINION OF THE COURT**

MILLER, J.

For nearly 400 years, the Trustees of the Freeholders and Commonalty of the Town of Southampton (hereinafter the Trustees or the Trust) have had the right, derived from royal land grants and patents, to control and manage the waters of the town. In the present day, the Trustees raise revenue from issuing licenses for activities including commercial fishing, charging permit fees for seasonal boat docking, dock and bulkhead construction, and dredging, and selling sand excavated from Mecox Bay. The Trustees deposit their revenues into several bank accounts, which, at the time this action was commenced, had an aggregate balance of close to $1 million. On this appeal, we are called upon to determine whether Town Law § 64 (1) requires the Trustees to turn over control of their revenues to the Town Board of the Town of Southampton (hereinafter the Town Board) and whether the expenditure of such revenues must therefore comply with the same statutes which govern town finances and expenditures. We conclude

that Town Law § 64 (1) does not require the Trustees to turn over control of their revenues to the Town Board, and that the statutes governing town finances and expenditures relied upon by the plaintiffs are inapplicable to the Trust.

I. Background

The plaintiffs are a group of Southampton residents and taxpayers who commenced this action against the Trustees, the Town Board, and the Town Comptroller, alleging that the Trustees had violated Town Law § 64 (1) by depositing their revenues into nine bank accounts over which the Town Board had no control. The plaintiffs further alleged that since the expenditures from these accounts were not specifically authorized by the Town Board and did not comply with the provisions of the Town Law governing town expenditures, they were illegal and constituted waste. Town Law § 64 (1) provides, in relevant part, that the town board of every town "[s]hall have the general management and control of the finances of the town" and "shall designate . . . the depositaries in which the supervisor, town clerk, tax collector, tax receiver, and *trustees of the freeholders and commonalty* of a town shall deposit and secure all moneys coming into their hands by virtue of their offices" (emphasis added).

The plaintiffs asserted causes of action grouped into two general categories. The first cause of action was asserted pursuant to General Municipal Law § 51, which authorizes a private right of action to prevent illegal acts or waste committed by public officers. The complaint alleged that all of the expenditures of the Trustees between January 1, 2005, and July 7, 2010, were illegal and constituted waste since they were not specifically approved by the Town Board or the Town Comptroller. The complaint also alleged that the Trustees had "colluded to contract for and pay unlawful claims" and that they should therefore be held individually liable for the allegedly unauthorized expenditures of the Trust.

The second cause of action sought declaratory relief, and demanded at least 12 specific declarations. Although some of the declarations sought by the plaintiffs pertained to the legality of specific expenditures, many of the requested declarations more broadly related to the control of the revenues and finances of the Trust and the authority to expend such funds. The plaintiffs additionally sought declarations concerning the applicability of municipal bidding requirements to the expenditures of the Trust (*see* General Municipal Law § 103), and

declarations that certain expenditures violated the constitutional prohibition against gifts of public money (*see* NY Const, art VII, § 8 [1]). The plaintiffs further sought an accounting of all of the Trust assets and expenditures, and injunctive relief prohibiting any expenditures without prior approval from, among others, the Town Board.

Shortly after this action was commenced, the plaintiffs moved by order to show cause for, inter alia, a preliminary injunction prohibiting any expenditures by the Trustees without specific approval from the Town Board and Town Comptroller. The Trustees, in both their official and individual capacities, moved pursuant to CPLR 3211 (a) to dismiss the complaint insofar as asserted against them for failure to state a cause of action and based on documentary evidence and, in effect, for a declaration in their favor in connection with the second cause of action. In support of their respective motions, the plaintiffs and Trustees submitted multiple affidavits, attorney affirmations, and documentary evidence pertaining to the role of the Trustees in the management of the town's waters. Among other things, the plaintiffs maintained that the funds in the Trustees' accounts were public funds, and that the Trustees had violated Town Law § 64 (1) by exclusively establishing and controlling the expenditures from their accounts without the approval of the Town Board. The plaintiffs additionally contended that an examination of town records showed that the Town had historically directed the Trustees' actions, and that the Trustees had not always "held unfettered control" over their funds. The Trustees countered that their right to control their own revenue was derived from the royal patent which created the Trustees as a unique body politic, and that as a separate and independent body, the Trustees were not subordinate to the Town or Town Board. The Trustees also maintained that the funds they raised, inter alia, from permit fees were not town property, and claimed that such funds were expended on services that furthered their mission, including environmental conservation efforts.

The Supreme Court determined that the funds in the Trustees' accounts were town funds subject to control by the Town Board (43 Misc 3d 517 [Sup Ct, Suffolk County 2014]). In support of its determination, the court reasoned that the specific reference in Town Law § 64 (1) to "the freeholders and commonalty of a town" dispelled "any notions of the financial independence of the Trustees from the Town and Town Board"

(*id.* at 528). The court further determined that Town Law § 64 (1) "expressly indicates that the monies coming into the Trustees' hands constitute[d] Town finances, meaning that said funds are to be credited to the Town, over which the Town Board has general management and control" (*id.*). The court also ruled that the Trust was an " '[a]dministrative unit' " of the town (Town Law § 103 [1]) and, thus, subject to article 8 of the Town Law, which governs town finances. In light of its legal determinations, the court denied the Trustees' motion to dismiss the complaint, concluding that the complaint stated cognizable causes of action pursuant to General Municipal Law § 51 and for declaratory relief. The court further concluded that the plaintiffs were entitled to a preliminary injunction since they had demonstrated, inter alia, a likelihood of success on the merits. That branch of the plaintiffs' motion which was for a preliminary injunction was, in effect, granted in a separate order.

The Trustees appealed from so much of the first order as denied their motion to dismiss the complaint and, in effect, for a declaration in their favor in connection with the second cause of action. The Trustees also appealed from the second order, which granted the motion for a preliminary injunction.

The Trustees thereafter moved for this Court "to take judicial notice of chapter 872 of the Laws of 1896 and chapter 387 of the Laws of 2013." By decision and order on motion of this Court dated June 4, 2014 (2014 NY Slip Op 73850[U] [2d Dept 2014]), as amended by a decision and order on motion of this Court dated June 5, 2014 (2014 NY Slip Op 74340[U] [2d Dept 2014]), that motion was held in abeyance and referred to the panel of Justices hearing the appeals.

II. Analysis

As an initial matter, the Trustees' motion for this Court to take judicial notice of the cited session laws is unnecessary. This Court is already "required, without request, to take judicial notice of the Constitution, the public statutes and the common law of the forum" (Jerome Prince, Richardson on Evidence § 2-301 at 46-47 [Farrell 11th ed 1995]; *see Meyer v Ambassador Trucking Corp.*, 72 AD2d 556, 557 [1979]; *see also* CPLR 4511 [a]). Accordingly, inasmuch as the cited session laws have been considered by this Court in connection with this matter, the Trustees' motion is denied as unnecessary.

Turning to the merits of the Supreme Court's determination, the primary issue underlying this case is the division of power

between the Trust and the Town Board. This is a pure legal issue calling for statutory interpretation; factual issues will not have an impact upon the powers and duties of the Trust. Accordingly, a determination of this issue may be made on the merits at this stage of the action (*see 401 W. 14th St. Fee LLC v Mer Du Nord Noordzee, LLC*, 34 AD3d 294, 295 [2006]; *Washington County Sewer Dist. No. 2 v White*, 177 AD2d 204, 206 [1992]; *see also North Oyster Bay Baymen's Assn. v Town of Oyster Bay*, 130 AD3d 885 [2015]; *Minovici v Belkin BV*, 109 AD3d 520, 524 [2013]). In order to gain perspective on this issue, the legal status and powers of the Trust must be traced from its inception up until the present day.

The Town of Southampton received its first patent from provincial Governor Edmond Andross, who had been appointed by the Duke of York, in 1676 (*see People ex rel. Howell v Jessup*, 160 NY 249, 258 [1899]; *Town of Southampton v Mecox Bay Oyster Co.*, 116 NY 1, 8 [1889]; *People v Miller*, 235 App Div 226, 228 [1932], *affd* 260 NY 585 [1932]). The Andross Patent

> "recited the existence of a town commonly called and known by the name of Southampton, and granted the lands within the town to JOHN TOPPING, justice of the peace, and fourteen others, for and on behalf of themselves and their associates, the freeholders and inhabitants of said town, their heirs, successors and assigns" (*Town of Southampton v Mecox Bay Oyster Co.*, 116 NY at 8; *see People ex rel. Howell v Jessup*, 160 NY at 258).

About 10 years later, the King of England appointed a new Governor of the province of New York—Thomas Dongan (*see Dolphin Lane Assoc. v Town of Southampton*, 72 Misc 2d 868, 872 [1971], *affd* 43 AD3d 727 [1973], *mod on other grounds* 37 NY2d 292 [1975]). Governor Dongan required the Town of Southampton to obtain a new patent (*see Dolphin Lane Assoc. v Town of Southampton*, 72 Misc 2d at 872). The Dongan Patent, which was obtained in 1686, was granted to 12 individual "freeholders and inhabitants of Southampton," who were made a body corporate to be called the "trustees of the freeholders and commonalty of the town of Southampton," and declared the first Trustees of the town (*Town of Southampton v Mecox Bay Oyster Co.*, 116 NY at 9; *Dolphin Lane Assoc. v Town of Southampton*, 72 Misc 2d at 872). The Dongan Patent "granted to the trustees of the freeholders and commonalty of the town

of Southampton a confirmatory charter or patent of the premises [described in the Andross Patent]" (*People ex rel. Howell v Jessup*, 160 NY at 258; *see People v Miller*, 235 App Div at 228). In addition to ratifying and confirming the Andross Patent, the Dongan Patent "conveyed also the waters, lakes and ponds and the easements of fishing, hawking and fowling" (*People v Miller*, 235 App Div at 228; *see People ex rel. Howell v Jessup*, 160 NY at 258). Accordingly, title to all of the areas described in the Dongan Patent that were not already in the lawful possession of an individual, including the land under the waters of the town, was vested in the Trustees (*see People ex rel. Howell v Jessup*, 160 NY at 258-259; *People v Miller*, 235 App Div at 228; *Dolphin Lane Assoc. v Town of Southampton*, 72 Misc 2d at 872).

The Andross and Dongan Patents "were confirmed by the act of the Colonial Assembly of May 6, 1691" (*Dolphin Lane Assoc. v Town of Southampton*, 72 Misc 2d at 872, citing Bradford's Laws at 6 [1694], and 1 Colonial Laws of NY at 224-225; *see People ex rel. Howell v Jessup*, 160 NY at 265-266, quoting 1 Colonial Laws of NY at 224, 225).

New York's first Constitution was adopted on April 20, 1777 (*see Sage v Mayor of City of N.Y.*, 154 NY 61, 82 [1897]). In it,

> "great care [was] taken to prevent the possibility of a claim that the Constitution affected any of the grants of land made by authority of the king, or annulled any charters to bodies politic made before the 14th day of October, 1775; indeed, the effect of the adoption of the first Constitution was to confirm the grants" (*People ex rel. Howell v Jessup*, 160 NY at 267; *see Sage v Mayor of City of N.Y.*, 154 NY at 82).

"By the thirty-fifth section of that Constitution such acts of the legislature of the colony of New York as were in force on the nineteenth of April, 1777 . . . were continued in force and made the law of this state" unless and until such laws were repealed or altered by the legislature (*Sage v Mayor of City of N.Y.*, 154 NY at 82; *see People ex rel. Howell v Jessup*, 160 NY at 266-267). "The natural effect of this supreme enactment was to give the force of law to every unrepealed act standing upon the statute books of the colony" (*Sage v Mayor of City of N.Y.*, 154 NY at 82). Since the colonial legislature had confirmed the Dongan Patent through legislation in 1691 (*see People ex rel. Howell v Jessup*, 160 NY at 265-266), it was thus reaffirmed by

the Constitution, subject to any changes by the state legislature (*see* NY Const, art I, § 14). In light of this constitutional provision, it has been repeatedly recognized that "the title and all rights of control granted to the [Trustees] [were] confirmed by the enactment of the colonial legislature, and continued by the provisions of the first . . . Constitution[ ]" (*People ex rel. Howell v Jessup*, 160 NY at 267; *see Knapp v Fasbender*, 1 NY2d 212, 221 [1956]; *State of New York v Trustees of Freeholders & Commonalty of Town of Southampton*, 99 AD2d 804, 805 [1984]; *People v Miller*, 235 App Div at 230).

Subsequent constitutions of this state have included the provision of the 1777 New York Constitution that recognized the prerevolutionary acts of the colonial legislature (*see* 1821 NY Const, art VII, § 13; 1846 NY Const, art I, § 17; 1894 NY Const, art I, § 16; 1938 NY Const, art I, § 14). Indeed, that provision remains in the New York Constitution to this day: "the acts of the legislature of the colony of New York . . . shall be and continue the law of this state, subject to such alterations as the legislature shall make concerning the same" (NY Const, art I, § 14). This provision of the Constitution has been cited by the Court of Appeals as a source of the Trustees' authority (*see People ex rel. Howell v Jessup*, 160 NY at 266-267; *Sage v Mayor of City of N.Y.*, 154 NY at 82).

In the years after the enactment of New York's first Constitution, the legislature exercised its constitutional authority to enact legislation pertaining to the power and duties of the Trust. In 1818, a statute was enacted which transferred title to certain undivided lands that had belonged to the Trust to a new corporate body (*see* L 1818, ch CLV; *see also Beers v Hotchkiss*, 256 NY 41, 58 [1931]; *Town of Southampton v Mecox Bay Oyster Co.*, 116 NY at 13-14; *Dolphin Lane Assoc. v Town of Southampton*, 72 Misc 2d at 871). However, this new corporate body was not given authority over the waters of the town. Rather, those powers were expressly reserved to the Trust: "[the] waters, fisheries, sea-weed and productions of the waters, shall be managed by the trustees of the freeholders and commonalty of the town of Southampton, for the benefit of said town, as they had the power to do [so] before the passing of this act" (L 1818, ch CLV, § IV).

Notwithstanding this explicit statement confirming the authority of the Trust over the town's waters, controversy continued in the ensuing decades (*see Town of Southampton v Mecox Bay Oyster Co.*, 116 NY at 14; *Dolphin Lane Assoc. v*

*Town of Southampton*, 72 Misc 2d at 873). In an effort to quell this ongoing dispute, additional legislation was enacted in 1831 (*see* L 1831, ch 283).

This 1831 act was titled "AN ACT declaring the Powers and Duties of the Trustees of the Freeholders and Commonalty of the Town of Southampton, in the County of Suffolk" (L 1831, ch 283). The statute stated that the Trustees of the Freeholders Trust "are and shall continue to be a corporation," and provided that the Trustees would be elected at annual town meetings (L 1831, ch 283, § 1). Section 5 of the 1831 statute reaffirmed the powers of the Freeholders Trust over matters relating to the town's waters:

> "The said trustees shall have the sole control over all the fisheries, fowling, sea weed, waters and productions of the waters within the said town . . . and all the property, commodities, privileges and franchises granted to them by the charter of Governor Dongan . . . except [insofar] as are abrogated, changed and altered by the laws of this state" (L 1831, ch 283, § 5).

The 1831 statute further provided that the Freeholders Trust "shall have [the] power to make rules, orders and by-laws for the management thereof and the regulation of their affairs, and to impose . . . penalties on any person offending against such rules, orders or by-laws" (L 1831, ch 283, § 5). As relevant here, the statute additionally stated that "the funds arising from fines, penalties and forfeitures, and the management of the property and franchises of the town, shall be appropriated and applied as the trustees may deem most proper to promote the interest of the said town" (L 1831, ch 283, § 4). By these provisions, the statute expressly granted the Trustees the power to manage their own affairs, and expend their revenues as they deemed proper.

In light of the 1818 and 1831 acts of the state legislature, the Court of Appeals has since recognized the authority of the Trust "to control and manage the waters of the town and their productions, and to exercise over them all the rights which flow from ownership and possession of title" (*Town of Southampton v Mecox Bay Oyster Co.*, 116 NY at 14; *see People ex rel. Howell v Jessup*, 160 NY at 262; *Dolphin Lane Assoc. v Town of Southampton*, 72 Misc 2d at 873).

Legislation specifically pertaining to the Freeholders Trust has been enacted throughout the years since the 1831 statute

was passed (*see e.g.* L 1896, ch 872; L 2013, ch 387). Furthermore, this Court has recognized the independent existence and powers of the Freeholders Trust up to modern times (*see e.g. Burch v Trustees of Freeholders & Commonalty of Town of Southampton*, 47 AD3d 654 [2008]; *State of New York v Trustees of Freeholders & Commonalty of Town of Southampton*, 99 AD2d 804 [1984]).

The plaintiffs argue on appeal that "[n]o provision of any statute defines the power of [the] town trustees." However, this contention overlooks the existence of the 1831 statute, in which the legislature clearly and unequivocally set forth the powers and duties of the Freeholders Trust (*see* L 1831, ch 283).

The failure to recognize the existence of this statutory authority defining the powers and duties of the Trustees may stem from the fact that the 1831 statute was not codified, and does not appear in McKinney's Consolidated Laws (hereinafter McKinney's) or the New York Consolidated Laws Service (hereinafter CLS). However, not every statute that existed with the force of law in 1909 was codified into the various chapters and articles of the consolidated laws (*see* William H. Manz, Gibson's New York Legal Research Guide, William S. Hein & Co., Inc. at 89-90 [4th ed 2014]). Indeed, even though both McKinney's and CLS contain volumes of "Unconsolidated" laws, these volumes include only those unconsolidated laws which have been selected by their respective editorial staffs because they are deemed "to be of general interest and of a permanent nature" (*id.* at 90). Unconsolidated laws that are not included in McKinney's or CLS may be located within the official session laws, Laws of New York, or in the Statutory Record of the Unconsolidated Laws, 1777-1928 (*see id.* at 90-91).

We turn now to an examination of whether the 1831 legislation remains effective to govern the duties and powers of the Trust. Although the plaintiffs contend, without much specificity, that control over the finances of the Trust was at some point given over to the Town Board, we find no evidence that the 1831 statute granting the Trustees control over their affairs and finances has ever been repealed or amended.

We note that at the time that both the 1818 (L 1818, ch CLV) and 1831 (L 1831, ch 283) statutes were enacted, legislation providing for the election and terms of town officers—the precursors to today's town boards—was already in effect (*see* L 1801, ch 78). The fact that the legislature reaffirmed the

existence and authority of the Trust on two occasions after the creation of town officers further indicates that the Trustees' authority was independent of Town control.

The precursor legislation to the modern Town Law, which was enacted in 1890, does not reveal any provisions purporting to transfer any authority from the Freeholders Trust to town officers or to the Town Board (*see* L 1890, ch 569, arts I-XI). Indeed, the plaintiffs do not allege that this legislation had an impact upon the powers or duties of the Trustees. Moreover, the "Schedule of Laws Repealed" by the 1890 legislation does not include either the 1818 statute (L 1818, ch CLV), or the 1831 statute (L 1831, ch 283) (*see* L 1890, ch 569, art XI).

The 1890 legislation was amended and recodified in 1932 (L 1932, ch 634). Although they acknowledge the 1932 legislative enactment, the plaintiffs do not cite to any provisions purporting to transfer any authority from the Trustees to individual town officers or to the Town Board. Nor does the act itself include the 1831 statute among the "laws repealed" by the 1932 legislation (*see* L 1932, ch 634, art 19, § 340).

Furthermore, no support for the conclusion that the Trustees are town officers, or that the Trust is an administrative unit of the town, can be found in the current Town Law. The Town Law currently defines town officers to include a supervisor, councilmen, a clerk, justices, a superintendent of highways, an assessor, and a receiver of taxes and assessments, but does not include trustees (*see* Town Law § 20). The Town Law also defines an "[a]dministrative unit" of a town, but does not include any reference to the Trust or the Trustees—defining "administrative unit" as "an office, department, division, bureau, board, commission, district, or other agency or town government, but shall exclude a fire district" (Town Law § 103 [1]).

Similarly, the current version of the General Municipal Law contains no indication that the Trust is part of local government, or that its funds are public funds. General Municipal Law § 10 (1) (a) defines "[l]ocal government" as "any municipal corporation, school district, board of cooperative educational services, district corporation, special improvement district governed by a separate board of commissioners, industrial development agency or authority or a public library." The term "municipal corporation" is, in turn, defined to include "only a county, town, city and village" (General Municipal Law § 2). "Public funds" are defined as the "funds of a local government"

(General Municipal Law § 10 [1] [b]). Accordingly, the General Municipal Law does not make any reference to the Trust in its definition of either public funds or local government.

The plaintiffs nevertheless contend that the specific reference to trustees in Town Law § 64 (1) demonstrates that the revenues of the Trust must be turned over to the Town Board, and that the expenditure of such revenues must therefore comply with the provisions of the Town Law governing town funds. That subdivision, titled "Control of town finances," currently provides that

> "the town board of every town . . .
>
> " . . . [s]hall have the general management and control of the finances of the town and shall designate in the manner provided by section ten of the general municipal law the depositaries in which the supervisor, town clerk, tax collector, tax receiver, and *trustees of the freeholders and commonalty of a town* shall deposit and secure all moneys coming into their hands by virtue of their offices" (Town Law § 64 [1] [emphasis added]).

This section appeared in substantially the same form in the 1932 legislation which recodified the Town Law (*see* L 1932, ch 634, art 4, § 64). However, the 1932 version did not include any reference to trustees (*compare* L 1932, ch 634, art 4, § 64 [1], *with* Town Law § 64 [1]). It only stated that a town board was required to "designate the banks or trust companies in which the supervisor shall deposit all moneys coming into his hands by virtue of his office" (L 1932, ch 634, art 4, § 64 [1]). That section further stated that the supervisor would not be liable for any loss due to "the default by any such depositary" (*id.*).

The specific reference to "[the] trustees of the freeholders and commonalty of a town" was added by legislation in 1938 (L 1938, ch 275, § 5). As amended in 1938, the subdivision stated:

> "[the town board] [s]hall have the general management and control of the finances of the town and shall designate by resolution the banks or trust companies of this state in which the supervisor, town clerk, tax collector, tax receiver, and trustees of the freeholders and commonalty of a town shall deposit all moneys coming into their hands by virtue of their offices" (L 1938, ch 275, § 5).

This 1938 enactment expanded the types of banks or trust

companies that could be designated by a town board, and again provided that, by depositing the funds in a bank or trust company that had been so designated by the town board, the depositing entity would be released "from any liability for loss of such moneys by reason of the default or insolvency of any such depositary" (*id.*).

While the 1938 enactment added the said reference to the trustees, there is nothing in the 1938 legislation that purported to amend the definition of town officers set forth in the 1932 version of the Town Law, which did not include the trustees of the freeholders and commonalty of a town (*see* L 1932, ch 634, art 3, § 20). Rather, the plain language of the statute merely required town boards to designate where trustees' funds are to be deposited and provided that by depositing their funds in such a manner, the trustees would be relieved of liability in the event that the depositing institution failed—a not unlikely event given that this act was passed in the wake of the Great Depression (*see* L 1938, ch 275, § 5).

To the extent that the plaintiffs contend that the language of the 1938 enactment is susceptible of a different meaning, review of the legislative history supports the plain language. The bill jacket for this legislation indicates that the legislature did not intend to amend the 1831 act and transfer financial authority from the Freeholders Trust to the Town (*see* Bill Jacket, L 1938, ch 275). A memorandum by the Association of Towns to the Governor, submitted with a letter describing the changes as "minor" (Letter of Assn of Towns, Bill Jacket, L 1938, ch 275 at 5), described the legislation as follows: "This bill authorizes the town boards to designate the banks or trust companies in which the trustees of the common lands of the town shall deposit all money coming into their hands and thereby relieve the trustees from liability for the default of such banks" (Mem of Assn of Towns at 4, Bill Jacket, L 1938, ch 275 at 9).

In sum, there is nothing in the legislative history to suggest that the 1938 act altered either the definition of town officers or the 1831 legislation which authorized the Freeholders Trust to manage its own financial affairs (*see* L 1831, ch 283, § 4). Rather, the legislative history indicates that the enactment was intended to accord trustees additional protections in the event of a bank failure, a reading consistent with the plain language of the statute.

Town Law § 64 was amended to its current form in 1992 (*see* L 1992, ch 708, § 34). This enactment removed from the Town

Law the language indicating that the trustees would be absolved of liability if their depositing entity defaulted (*see* L 1992, ch 708, § 34), and that provision is now codified in the General Municipal Law (*see* General Municipal Law § 10 [2] [b]), which additionally contains various requirements concerning the eligibility of certain institutions to qualify as depositaries (*see generally* General Municipal Law § 10).

The plaintiffs contend that Town Law § 64 (1) operates to incorporate the provisions of the General Municipal Law and render those provisions applicable to Trust revenue, specifically the paragraph which provides that "[e]xcept as otherwise provided by law, all deposits shall be made to the credit of the local government" (General Municipal Law § 10 [2] [b]). Contrary to the plaintiffs' contention, Town Law § 64 (1) merely requires town boards to make designations in a manner consistent with General Municipal Law § 10, and the Trust to deposit its revenue into a designated depositary—it does not transfer control over Trust revenue to the Town Board or otherwise render Trust funds "public funds" within the meaning of the General Municipal Law (General Municipal Law § 10 [2] [b]). In any event, since the Trust was given the explicit legislative authority over its own revenue pursuant to the legislation of 1831 (*see* L 1831, ch 283, § 4), and since that legislation has not been repealed or amended, the disposition of the Trust's revenues may be said to be "otherwise provided by law" within the meaning of General Municipal Law § 10 (2) (b).

III. Conclusion

In sum, Town Law § 64 (1) merely requires a town board to "designate . . . the depositaries in which the . . . trustees of the freeholders and commonalty of a town shall deposit and secure all moneys coming into their hands." The enactment of that section was intended to provide the Trustees with additional protection against failing financial institutions. There is nothing in the plain language of the statute or the legislative history to indicate that it was intended to transfer authority over Trust revenue away from the Trustees, or to otherwise abrogate or repeal the explicit legislation setting forth the duties and powers of the Trustees with respect to Trust revenue (*see* L 1831, ch 283). Although the legislature surely could transfer control over Trust revenue to the Town Board, it has not done so. There is nothing in the constitutional or statutory history of this state that suggests that Trust revenues are

subject to Town control. To the contrary, the past 400 years of legal history reveal consistent recognition and ratification of the independent existence of the Trust.

Since the causes of action in the complaint are all premised on the contention that the Trust revenue is subject to the control of the Town Board pursuant to Town Law § 64 (1), that the Trust is an administrative unit of the town pursuant to that section, or that such revenue otherwise constitutes public funds within the meaning of the General Municipal Law, the foregoing analysis conclusively disposes of the complaint, as a matter of law, insofar as it is asserted against the Trustees. Accordingly, the order dated January 22, 2014, is reversed insofar as appealed from, the Trustees' motion pursuant to CPLR 3211 (a) to dismiss the complaint insofar as asserted against them, and, in effect, for a declaration in their favor in connection with the second cause of action is granted, the order dated January 31, 2014, is reversed, that branch of the plaintiffs' motion which was for a preliminary injunction is denied, and the matter is remitted to the Supreme Court, Suffolk County, for the entry of a judgment, inter alia, declaring that Town Law § 64 (1) does not require the Trustees of the Freeholders and Commonalty of the Town of Southampton to turn over control of their revenues to the defendant Town Board of the Town of Southampton.

MASTRO, J.P., DILLON and MALTESE, JJ., concur.

Ordered that the order dated January 22, 2014, is reversed insofar as appealed from, on the law, and the appellants' motion pursuant to CPLR 3211 (a) to dismiss the complaint insofar as asserted against them, and, in effect, for a declaration in their favor in connection with the second cause of action is granted; and it is further

Ordered that the order dated January 31, 2014, is reversed, on the law, and that branch of the plaintiffs' motion which was for a preliminary injunction is denied; and it is further

Ordered that the matter is remitted to the Supreme Court, Suffolk County, for the entry of a judgment, inter alia, declaring that Town Law § 64 (1) does not require the Trustees of the Freeholders and Commonalty of the Town of Southampton to turn over control of their revenues to the defendant Town Board of the Town of Southampton; and it is further

Ordered that one bill of costs is awarded to the appellants, payable by the respondents.

Motion by the appellants for this Court to take judicial notice of certain session laws. By decision and order on motion of this Court dated June 4, 2014 (2014 NY Slip Op 73850[U] [2d Dept 2014]), as amended by decision and order on motion of this Court dated June 5, 2014 (2014 NY Slip Op 74340[U] [2d Dept 2014]), that motion was held in abeyance and referred to the panel of Justices hearing the appeals for determination upon the argument or submission thereof.

Upon reading and filing the papers submitted in support of the motion, the papers submitted in opposition thereto, and upon the argument of the appeals, it is

Ordered that the motion is denied as unnecessary.

MASTRO, J.P., DILLON, MILLER and MALTESE, JJ., concur.