[64 NYS3d 133]

In the Matter of GLOBAL COMPANIES LLC, Respondent-Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents-Appellants, and CHARLENE BENTON, as President of Ezra Prentice Home Tenants Association, et al., Appellants-Respondents. (And Another Related Proceeding.)

Third Department, October 26, 2017

**APPEARANCES OF COUNSEL**

*EarthJustice*, New York City (*Christopher Amato* of counsel), and *Pace Environmental Litigation Clinic, Inc.*, White Plains (*Todd Ommen* of counsel), for appellants-respondents.

*Young/Sommer LLC*, Albany (*Jeffrey S. Baker* of counsel), for Global Companies LLC, respondent-appellant.

*Eric T. Schneiderman, Attorney General*, Albany (*Susan L. Taylor* of counsel), for New York State Department of Environmental Conservation and others, respondents-appellants.

**OPINION OF THE COURT**

PRITZKER, J.

Cross appeal from a judgment of the Supreme Court (McDonough, J.), entered April 19, 2016, in Albany County, which, among other things, partially dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of respondent Department of Environmental Conservation rescinding its notice of complete application to petitioner.

Petitioner maintains a 63-acre petroleum storage and transfer facility in the City of Albany. In June 2013, petitioner submitted an application to respondent Department of Environmental Conservation (hereinafter DEC) for modification of its clean air permit under title V of the Clean Air Act (*see* 42 USC § 7661 *et seq.*; ECL 19-0311), seeking to expand its crude oil storage capabilities, which included, among other things, installing gas-fired boilers to heat oil in railcars and storage tanks. On November 21, 2013, DEC issued a notice of complete application (hereinafter NOCA), informing petitioner that a technical review had commenced and that an opportunity for public comment was required regarding the application. DEC designated itself the lead agency to review the application under the State Environmental Quality Review Act (*see* ECL art 8 [hereinafter SEQRA]) and rendered a negative declaration thereunder.

An extensive public comment period spanning over a year ensued, yielding approximately 19,000 comments on the matter. In April 2014, the Environmental Protection Agency (hereinafter EPA) submitted a letter to DEC, which, among other things, questioned petitioner's calculation of the project's emission potential of volatile organic compounds. In June 2014, respondent Charlene Benton, as president of the Ezra Prentice Home Tenants Association, a housing project adjacent to the site, as well as several environmental groups (hereinafter collectively referred to as the Benton respondents), filed a combined CPLR article 78 proceeding and declaratory judgment action (hereinafter Benton proceeding) seeking, among other things, a judgment declaring that the issuance of a negative declaration under SEQRA was unlawful and to annul the negative declaration.

On May 21, 2015, DEC notified petitioner that it was rescinding the NOCA and intended to rescind the negative SEQRA declaration. Thereafter, petitioner commenced the instant combined CPLR article 78 proceeding and action for a declaratory judgment against DEC and various DEC representatives (hereinafter collectively referred to as the DEC respondents) seeking, among other things, a judgment (1) compelling DEC to make a final decision on its permit application (the first cause of action), (2) annulling DEC's rescission of the NOCA and compelling DEC to complete its review of the permit application (the second cause of action), (3) declaring that DEC failed to act in a timely manner and could not rescind the negative SEQRA declaration (the third cause of action), and (4) compelling DEC to issue an amended negative SEQRA declaration (the fourth cause of action). The DEC respondents served an answer that, among other things, sought dismissal of the petition; the Benton respondents moved to intervene and consolidate and the DEC respondents cross-moved to join the matter with the Benton proceeding. After oral argument, Supreme Court, among other things, granted the Benton respondents' motion for permissive intervention, remanded the matter to DEC and directed it to render a decision on the permit application within 60 days and dismissed petitioner's third and fourth causes of action on ripeness grounds. Petitioner and respondents appeal.

▮ Supreme Court properly granted intervenor status to the Benton respondents and likewise appropriately joined the two actions/proceedings. Intervention may be permitted by the

court " 'when the person's claim or defense and the main action [or proceeding] have a common question of law or fact' " (*Borst v International Paper Co.*, 121 AD3d 1343, 1346 [2014], quoting CPLR 1013; *see Matter of Pier v Board of Assessment Review of Town of Niskayuna*, 209 AD2d 788, 789 [1994]). The resolution of a motion to intervene is a matter reserved for the sound discretion of the trial court and is reviewed for abuse of discretion (*see* CPLR 1013; *Matter of Pace-O-Matic, Inc. v New York State Liq. Auth.*, 72 AD3d 1144, 1145 [2010]; *see also Borst v International Paper Co.*, 121 AD3d at 1346). The relief requested in the Benton proceeding included, among other things, an order annulling the negative declaration and directing DEC to issue a positive declaration. Given that the Benton proceeding challenges the same permit application, raises significant environmental and health-related concerns associated therewith and focuses on the same actions of DEC, the Benton respondents have established common questions of law and fact, as well as "a direct and substantial interest in the outcome of the proceeding" (*Matter of Pier v Board of Assessment Review of Town of Niskayuna*, 209 AD2d at 789). As such, the court did not abuse its discretion in permitting intervention and ordering joinder.

Supreme Court did, however, err in granting mandamus relief by directing DEC to act on the permit application within 60 days, as not only was DEC authorized to rescind the NOCA, but the rescission was both timely and rationally based.[1] The EPA has delegated to DEC the authority to issue and modify clean air permits under title V of the Clean Air Act (*see* 42 USC § 7661a [d] [1]; ECL 19-0311 [1]). In reviewing title V permit modifications, DEC must follow and harmonize relevant portions of certain statutes and regulations promulgated under the Clean Air Act, New York's Air Pollution Control Act (*see* ECL art 19), SEQRA and New York's Uniform Procedures Act (*see* ECL art 70). To ensure timely decisions on such permit applications, DEC is required to "take final action on a permit application within [18] months after the date of receipt of a complete application" (ECL 19-0311 [2] [i]), and, in the event that it fails to do so, such failure is considered final agency ac-

1. Contrary to the Benton respondents' contention, while the legality of the rescission was not directly decided by Supreme Court, it is a purely legal issue and may be decided by this Court incident to the arbitrary and capricious analysis (*see* CPLR 5501 [c]; *see generally Gessin v Throne-Holst*, 134 AD3d 31, 36 [2015], *lv dismissed* 26 NY3d 1094 [2016]).

tion solely for the purpose of judicial review (*see* ECL 19-0311 [2] [i]). A complete application is defined as "an application for a permit which is in an approved form and is determined by [DEC] to be complete for the purpose of commencing review" (ECL 70-0105 [2]; 6 NYCRR 621.2 [f]).

SEQRA must also be addressed, and an application is not deemed complete until a properly completed environmental assessment form has been furnished, a lead agency has been established and either a negative or conditioned negative declaration has been filed, or, where there has been a positive declaration, a draft environmental impact statement has been prepared and is acceptable for public review (*see* 6 NYCRR 621.3 [a] [7] [i]-[iv]). Significantly, at any time prior to a final permit decision under its rules and regulations, DEC—as lead agency—"must rescind a negative declaration when substantive: (i) changes are proposed for the project; or (ii) new information is discovered; or (iii) changes in circumstances related to the project arise . . . that were not previously considered and the lead agency determines that a significant adverse environmental impact may result" (6 NYCRR 617.7 [f] [1]).

DEC issued the NOCA in November 2013, and petitioner argues alternatively that, once the NOCA was issued, either it could not be rescinded at all, it was rescinded in an untimely fashion or the rescission was arbitrary and capricious. While it is true that DEC's discretionary authority to rescind a NOCA is not express, it is implied through the statutes and rules governing this dispute and is specifically addressed in the commentary explaining the federal regulations governing state delegated operating permit programs under the Clean Air Act (*see* 57 Fed Reg 32250-01, 32254 [1992]; *see generally* 40 CFR part 70). DEC initially contends that it rescinded the NOCA because it received new information during the review process and the project itself was modified, without the opportunity for public comment (*see* 6 NYCRR 621.10 [d]). While petitioner correctly asserts that the mere furnishing of additional information will not affect NOCA status (*see Matter of Concerned Citizens of Allegany County v Zagata*, 231 AD2d 851, 852 [1996], *lv denied* 89 NY2d 814 [1997]), the receipt of materially relevant and new information can legally and logically trigger rescission because DEC could no longer "issue the permit within the specified deadlines" (57 Fed Reg 32250-01, 32254 [1992]) and the public was not on notice of project modifications (*see* 6 NYCRR 621.10 [d]).

It is well-settled that when faced with new information or changed circumstances, agencies are permitted to reconsider and alter their prior determinations (*see Matter of Sullivan County Harness Racing Assn. v Glasser*, 30 NY2d 269, 277 [1972]; *Matter of Arnot-Ogden Med. Ctr. v Chassin*, 229 AD2d 833, 836 [1996], *lv denied* 89 NY2d 801 [1996]). More particularly, DEC's implied authority to revoke a NOCA under certain circumstances promotes the legislative intent of the Clean Air Act and SEQRA (*see* 42 USC § 7401 [c]; ECL 8-0103 [1]). Further, there is nothing contained in the Uniform Procedures Act that precludes rescission of a NOCA (*cf.* Tex Health & Safety Code § 361.068 [b] [1] ["the commission may not revoke the determination that an application is administratively or technically complete"]). DEC's implied authority to rescind a NOCA also harmonizes its express authority to rescind a SEQRA negative declaration and issue a positive declaration, which, if exercised, would render an application incomplete, as a complete application is tethered to the filing of a negative declaration or draft environmental impact statement in the event that a positive declaration is issued (*see* 6 NYCRR 621.3 [a] [7] [i]-[iv]). Thus, DEC has discretionary authority to determine whether an application is complete and the concomitant implied authority to deem that same application incomplete upon the receipt of relevant and substantial new information. Therefore, as DEC had discretion to rescind the NOCA, the mandamus relief granted by Supreme Court, requiring DEC to take final action within 60 days, was unwarranted as petitioner cannot establish a clear right to the requested relief (*see Klostermann v Cuomo*, 61 NY2d 525, 539 [1984]; *Matter of Hamptons Hosp. & Med. Ctr. v Moore*, 52 NY2d 88, 95-96 [1981]).

■ While DEC has the discretionary authority to revoke a NOCA, the revocation is still measured against the arbitrary and capricious standard and, therefore, must have a "sound basis in reason" (*Matter of Prestige Towing & Recovery, Inc. v State of New York*, 74 AD3d 1606, 1607 [2010] [internal quotation marks and citation omitted]; *see* CPLR 7803 [3]). DEC issued its NOCA in November 2013, triggering an 18-month review period (*see* ECL 19-0311 [2] [i]). During this review period, an extensive public hearing process ensued, lasting over a year and garnering 19,000 comments. Also, the EPA, which maintains oversight authority (*see* 42 USC § 7661a [d] [1]), informed DEC of its concerns and later requested that any revised draft permit issued by DEC be provided to EPA for review prior to formal submission.

The May 2015 notice sent by DEC clearly detailed and explained that it was rescinding the NOCA because (1) public comments received suggested that, as a result of the numerous changes to petitioner's application, the record available for public review during most of the public comment period "did not include an adequate description of the proposed project and all potential permit conditions necessary to satisfy applicable criteria," (2) EPA's actions and comments indicated that petitioner's application was not complete, (3) petitioner's modification application did not make public its ambient air quality modeling for hydrogen sulfide, and (4) the new source review portions of the application were incomplete.[2] In particular, in August 2014, nine months after the NOCA was issued, petitioner proposed to reduce the emission rate of a marine vapor combustion unit, which petitioner claimed would lower the project's emission potential below the threshold for new source review. This was a substantive change that was not subject to public review (see 6 NYCRR 621.10 [d]), and petitioner neither revised its application nor submitted a new application, either of which would have restarted the 18-month review period.

The reasons supporting the rescission of the NOCA were also inextricably tied to the rationale underpinning the notice of intent to rescind the negative declaration. There, DEC considered new information regarding increased hydrogen sulfide emissions, increased volumes of tar sands oils and two recent spills at petitioner's facilities, raising legitimate concerns as to petitioner's spill prevention measures. Based on these significant issues, the decision to rescind the NOCA was rational. Further, the fact that petitioner has obtained judicial review of this decision belies its assertions that the rescission leaves it in administrative limbo. Indeed, if DEC's decision was not rational, it would not stand. Further contentions that rescinding the NOCA will eviscerate the Uniform Procedures Act are misplaced as the 18-month time limit applies to a completed application, not one that has been substantially modified without public review and where significant new information has come to light (see ECL 19-0311 [2] [i]).

---

**2.** New source review is a procedure requiring heightened review for projects presenting a major pollution source in an area designated as being in non-attainment with a national ambient air quality standard. The area where petitioner's facility is located has been so designated with respect to ozone. The EPA put petitioner on notice that it had miscalculated emissions and that the project's actual emissions would trigger new source review.

Petitioner also maintains that both the rescission of the NOCA and the intent to rescind the negative declaration were untimely. The NOCA rescission was issued on the last day of the deadline and was therefore timely. Likewise, because DEC lawfully rescinded the NOCA, the notice of intent to rescind the negative declaration was also timely as no final decision on the permit modification had as yet been rendered (*see* 6 NYCRR 617.7 [f] [1]) and the 18-month deadline was tolled. Petitioner's further contentions that the notice to rescind the negative declaration was arbitrary and capricious is not ripe for judicial review because DEC has not rendered a definitive decision in this respect and, accordingly, petitioner has not suffered a concrete injury (*see Matter of Town of Riverhead v Central Pine Barrens Joint Planning & Policy Commn.*, 71 AD3d 679, 681 [2010]; *Matter of Demers v New York State Dept. of Envtl. Conservation*, 3 AD3d 744, 746 [2004]). We have examined the remaining contentions and have found them to be without merit.

GARRY, J.P., EGAN JR., LYNCH and AARONS, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as compelled respondent Department of Environmental Conservation to act within 60 days, and, as so modified, affirmed.