Matter of Hudson Val. Hous. Dev. Fund Co., Inc. v County of Ulster (2020 NY Slip Op 02693)





Matter of Hudson Val. Hous. Dev. Fund Co., Inc. v County of Ulster


2020 NY Slip Op 02693


Decided on May 7, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 7, 2020

528980

[*1]In the Matter of Hudson Valley Housing Development Fund Company, Inc., Petitioner,
v
County of Ulster et al., Respondents.

Calendar Date: March 25, 2020

Before: Lynch, J.P., Mulvey, Devine, Aarons and Colangelo, JJ.


E. Stewart Jones Hacker Murphy LLP, Latham (Brett T. Williams of counsel), for petitioner.
Cook, Netter, Cloonan, Kurtz & Murphy, PC, Kingston (Eric M. Kurtz of counsel), for respondents.



Mulvey, J.
Proceeding initiated in this Court pursuant to EDPL 207 to
review a determination of respondents condemning a portion of petitioner's land as the site for constructing a bicycle and pedestrian path.
Petitioner, a not-for-profit housing development fund company (see Private Housing Finance Law art XI; N-PCL 402), owns two parcels of land, a 3.3-acre parcel (hereinafter the subject parcel) and a 19.5-acre parcel (hereinafter the larger parcel), in the City of Kingston, Ulster County. The two parcels are separated by the U & D Railroad, an active railroad owned by respondent County of Ulster. Petitioner intends to build a housing complex on the larger parcel, which is landlocked and would connect to a main road through the subject parcel and an easement that petitioner endeavors to obtain from respondents over the U & D Railroad. The subject parcel includes the bed of the former O & W Railroad, which is now a dirt path. The O & W Railroad path and the U & D Railroad run parallel to each other until they diverge before intersecting with the New York State Thruway.
Respondents seek to acquire an easement over the subject parcel to construct a 1.8-mile paved connector trail along the former O & W railbed to connect the City of Kingston, which is situated to the east of the Thruway, to the O & W Rail Trail, a recreational trail situated to the west of the Thruway (hereinafter the project). Petitioner and its predecessor-in-interest offered to provide the County with an easement over the subject parcel in exchange for an easement in petitioner's favor over the U & D Railroad. However, respondents contend that simply exchanging easements would jeopardize federal and state funding for the project. Accordingly, the County offered petitioner $24,000 for a permanent easement over the subject parcel; petitioner never responded to the offer. In February 2019, respondent Legislature of the County of Ulster adopted a determination and findings related to the project pursuant to EDPL 204 (hereinafter the determination). The determination stated that a State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]) review was completed in March 2016, at which time the County issued a negative declaration, identifying the project as one that will not have any significant adverse effects on the environment. The project was reviewed as an unlisted action. Petitioner commenced this proceeding pursuant to EDPL 207 seeking to challenge the determination.
We confirm. The scope of this Court's review of a condemnor's EDPL 204 determination is limited to "whether (1) the proceeding was constitutionally sound; (2) the condemnor had the requisite authority; (3) its determination complied with SEQRA and EDPL article 2; and (4) the acquisition will serve a public use" (Matter of City of New York [Grand Lafayette Props. LLC], 6 NY3d 540, 546 [2006]; see EDPL 207 [C]; Matter of Uncle Sam Garages, LLC v Capital Dist. Transp. Auth., 171 AD3d 1260, 1260 [2019], lv denied 33 NY3d 912 [2019]). "As the party challenging the condemnation, petitioner bears the burden of showing that the . . . determination was without foundation and baseless, or that it was violative of any of the applicable statutory criteria" (Matter of Uncle Sam Garages, LLC v Capital Dist. Transp. Auth., 171 AD3d at 1260 [internal quotation marks and citations omitted]). Petitioner does not allege that respondents lack the requisite authority or that the process utilized was constitutionally unsound. Instead, petitioner argues that respondents violated SEQRA by designating the project as an unlisted action rather than a type I action and failed to follow several procedures required for a type I action. Further, petitioner argues that respondents were required to conduct additional environmental review after new information surfaced, and that the new information defeated the project's public purpose.
As relevant here, type I actions, which are presumed to be likely to have a significant impact on the environment, include any action that involves the physical alteration of over 2.5 acres "wholly or partially within an agricultural district" or "wholly or partially within or substantially contiguous to any publicly owned or operated parkland, recreation area or designated open space" (6 NYCRR 617.4 [b] [6] [i]; [8], [10]; see Matter of Gabrielli v Town of New Paltz, 116 AD3d 1315, 1316 [2014], lv denied 24 NY3d 901 [2014]). A map in an appendix to the project's final design report shows a small portion of a specified agricultural district within a rectangle labeled "Project Location." However, the report itself states that the project is not located within an agricultural district. No explanation is provided for the discrepancy. It is possible that the portion of the map labeled "Project Location" depicts an alternate location that respondents considered for the project, which is just north of the chosen location and referred to as the U & D Corridor; the report indicates that "land on the northern side of [the U & D Corridor] is located within" the specified agricultural district. Regardless, because the submitted materials provide only contradictory evidence regarding the location of the project relative to the agricultural district, petitioner has not established that the project includes any property "wholly or partially within an agricultural district" that would require classification of this project as a type I action (6 NYCRR 617.4 [b] [8]).
The project will create a 10-foot-wide paved trail that will connect to an existing paved trail. Although the existing trail is arguably a "recreation area," that single connection point will not require alteration of land "substantially contiguous to any publicly owned or operated . . . recreation area" (6 NYCRR 617.4 [b] [10] [emphasis added]). Petitioner's other assertions regarding the project's proximity to parkland, recreation areas or designated open spaces is not supported by the record. Because petitioner provided only inconclusive proof that the project location lies partially within an agricultural district and petitioner's claim that the project will require alteration of land substantially continuous to parkland, recreation areas or designated open spaces is unfounded, the project was properly categorized as an unlisted action (see 6 NYCRR 617.2 [al]; 617.4 [b] [8], [10]). Accordingly, respondents were not required to follow the procedural requirements for type I actions (see e.g. 6 NYCRR 617.6 [a] [2]; 617.12 [c] [1]).
Finally, petitioner asserts that the project no longer has a public use, benefit or purpose because the Thruway Authority plans to close a tunnel that respondents intend to use to facilitate the project. According to petitioner, this new information that was discovered since respondents' determination should defeat the project (see EDPL 207 [C] [4]), or at least require respondents to amend or rescind their negative declaration under SEQRA and conduct further review. A lead agency "must rescind a negative declaration when substantive: (i) changes are proposed for the project; or (ii) new information is discovered; or (iii) changes in circumstances related to the project arise that were not previously considered and the lead agency determines that a significant adverse environmental impact may result" (Matter of Global Cos. LLC v New York State Dept. of Envtl. Conservation, 155 AD3d 93, 98 [2017] [internal quotation marks, ellipsis and citation omitted], lv denied 30 NY3d 913 [2018]; see Matter of Village of Ballston Spa v City of Saratoga Springs, 163 AD3d 1220, 1226 [2018]).
A month after the determination was adopted, petitioner sent respondents a letter stating that "the tunnel under the Thruway is owned outright by the Thruway Authority" and "the Thruway Authority has advised [petitioner] that it has ceased any further capital upkeep of the tunnel and that it will fill in the tunnel . . . once it becomes necessary to protect public safety." Even assuming the accuracy of this hearsay information, the record indicates that, before reaching the determination on review, respondents contemplated that they would require either a use and occupancy permit or a memorandum of understanding with the Thruway Authority regarding use of the tunnel. In their answer, respondents affirmed that if the Thruway Authority closed the tunnel, they would receive a use and occupancy permit for a smaller nearby tunnel. Because the record demonstrates that the project previously planned for the procurement of a use and occupancy permit to use the tunnel and respondents accounted for the prospect of the tunnel's unavailability by creating a contingency plan that ensures that the project remains viable, petitioner failed to prove that respondents received any new information that would require them to revoke or amend their negative declaration or that would defeat the project's public purpose (see Matter of Village of Ballston Spa v City of Saratoga Springs, 163 AD3d at 1226; Matter of Global Cos. LLC v New York State Dept. of Envtl. Conservation, 155 AD3d at 98).
Lynch, J.P., Devine, Aarons and Colangelo, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.